CORA L. READ, Appellee, v. GUS REPPERT, Appellant.

**PRINCIPAL AND AGENT:** Evidence—Indirect Admission. Evidence of an indirect and inferential nature may be sufficient to establish, *prima facie,* that a car belonged to the defendant, and that the driver thereof was, at the time of an accident, the servant and agent of the defendant.

**NEGLIGENCE:** Evidence—Admissions Against Interest. A statement by a principal, to the effect that he "realized that the boy (his agent) was probably driving in a reckless manner," is admissible on the issue of negligence, even though the principal was not present at the accident in question.

**NEGLIGENCE:** Contributory Negligence—Guarding Against Danger. A traveler may not be said to be negligent *per se* because he fails to maintain a *constant* lookout for danger while crossing a public street.

**NEW TRIAL:** Verdict—Excessiveness. Verdict for $3,000 for slight personal injury reduced to $2,000.

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

OCTOBER 17, 1922.

ACTION to recover damages for personal injury. The jury returned a verdict in favor of plaintiff for $3,000, and judgment was entered thereon. Defendant appeals.—*Affirmed on condition.*

*Stipp, Perry, Bannister & Starzinger* and *Frank J. Comfort,* for appellant.

*John McLennan,* for appellee.

ARTHUR, J.—The plaintiff, a stenographer, 21 years of age, rode in a Hudson Super Six automobile with L. J. Brooks from the business section of the city of Des Moines, starting a little after 6 o'clock in the evening, out into a residence section, to the corner of Thirty-sixth Street and Woodland Avenue, a distance of perhaps 30 odd blocks. The car stopped on the north side of Woodland Avenue, immediately west of Thirty-sixth Street, headed west. The plaintiff, who had been riding in the rear seat, alighted on the north side of the automobile, and stepped upon the pavement between the north side of the automobile and the north curbing of Woodland Avenue. The automobile had a top, which was up, and the side curtains were drawn. It was dark. Immediately after alighting from the automobile, plaintiff stepped around the back end of the car, which moved on toward the west, and started south across Woodland Avenue, to go to a house, No. 747 Thirty-sixth Street, on the south side of the street. While in the act of crossing Woodland Avenue, she was struck by a Ford automobile, coming from the west and traveling in an easterly direction on Woodland Avenue, and was injured. Woodland Avenue and Thirty-sixth Street are 26 feet and 4 inches in width, from curb to curb, and are paved with asphalt.

R. H. Boldrick was riding with Mr. Brooks in the Hudson Super Six. Ed Berendt was driving the Ford automobile, without anyone in the car with him.

The defendant is engaged in the drug business at the northwest corner of Thirty-fifth Street and Ingersoll Avenue.

Plaintiff alleged that defendant was the owner of the Ford

*Margin note:* 1. PRINCIPAL AND AGENT: evidence: indirect admission.

automobile which struck her, and that the driver of the Ford automobile, Berendt, was, at the time of the accident, a servant of defendant's, and that the injury resulted from the negligence of defendant, through such servant, in operating the automobile. The negligence alleged was in operating the automobile at a high and dangerous rate of speed, to wit, about 30 miles per hour, and in not having the car under control at the point of the accident, and in not giving any warning of his approach, by sounding a horn or other signal as he approached said street crossing.

At the close of all the evidence, defendant moved for a directed verdict on many grounds, chief of which were that the evidence failed to show negligence on the part of the defendant which was the proximate cause of the accident; that the evidence failed to show that the plaintiff was free from contributory negligence; that the evidence affirmatively showed that the plaintiff was guilty of some negligence on her part, contributing in some degree to the accident.

The motion was overruled. Defendant then requested certain instructions which were refused, and which will be later considered, with assignments of error. After verdict was returned and judgment entered thereon, defendant moved for a new trial on many grounds, which motion was overruled.

In considering the assigned errors, we will first take up appellant's claim that it was error to submit the case to the jury, because, as defendant claims, there was no evidence to sustain the allegation that the automobile in question was owned by appellant, or was being driven or operated by a servant or agent of appellant's. This question was raised in several assignments, which may be discussed together. This point was not specifically raised, however, until in the motion for a new trial.

It was, of course, incumbent on the plaintiff to show that the defendant owned the automobile, and that the driver was the employee of the defendant, operating the machine in the scope of his employment, at the time of the accident in question. There was no direct testimony offered by plaintiff to show that defendant was the owner of the car, or that Berendt, who was driving the car, was doing so as the servant of defendant. Defendant contends that there was no evidence whatsoever tending

to show that defendant owned the Ford automobile, and·that there was no evidence tending to show that the driver of the automobile was the servant of the defendant, or that he was acting within the scope of the defendant's employment ·and in the course of defendant's business, and that he was driving the car with the consent of the defendant, as owner.  The testimony which plaintiff claims proves that defendant was the owner of the car, and that Berendt was his servant, in driving the car, is the evidence of Dr. C..H. Read, and some items of testimony and circumstances shown in the evidence of other witnesses.  Dr.

2. NEGLIGENCE: evidence: admissions against interest.

C. H. Read, father of plaintiff, testified that he saw defendant several times after the accident, in his store, and had conversation with him in reference to the accident, and that defendant said to him that he "realized that the boy was probably driving in a reckless manner; that he did not want to appear small in the matter, and referred me to the agency in the S. & L. Building." Counsel for defendant objected to the question that called out this quoted statement, and afterwards moved to strike the statement, for the reason that it affirmatively appeared that the defendant was not at the scene of the accident, and had no personal knowledge about how the car was driven, and that the answer purports only to give the opinion and conclusion of defendant about that which he did not see.  The answer was allowed to stand, the court remarking that it "is an assumption that must have been based upon information procured from this man, or upon belief, at least." Permitting the question to be answered and the answer to stand are assigned as error; and we might here conveniently consider it.  It is quite apparent that counsel for appellee was seeking to prove negligence, and not ownership of the car, nor that the driver was in the employ of the defendant.  However, if the answer was competent for such purpose, it could properly be considered on any other issue that it tended to prove.  We think permitting the answer to stand as an admission against interest was not error.  True, appellant did not see the accident, and had no knowledge gained by observation as to how the car was being driven by the boy.  The driver, Berendt, was a boy 18 years of age.  But we think the trial court did not err in ruling, in effect, that the statement

of defendant, if made, was an assumption based on information or belief. If defendant afterwards discovered that his information or belief was erroneous, because not based upon facts, then he could easily have made explanation of his statement, if he had made the statement. Defendant denied that he made any such statement; but it was for the jury to determine whether he did or not.

Defendant, Gus Reppert, testified that Dr. Read came into his store, the third night after the accident, and that they had a conversation.

"But in that conversation the conduct of the driver of the Ford was never mentioned. I never had any conversation with Dr. Read, at any time or at any place, with reference to the conduct of the driver of the Ford, or with reference to the kind of a driver that boy was. The driver was not mentioned in any conversation I had with Dr. Read."

Reppert further testified that Dr. Read came to his store the third night after the accident, and that they talked about the condition of the girl.

"I told him I was very sorry. I called him once before, over the phone, and explained that I was sorry the accident had occurred."

He further said that he had the girl employed at his store call the house, the next day after the accident; that he told her to call up and find out the condition of plaintiff; but that she failed to get a response, and that he called in the evening, and asked how the girl was getting along.

Ed Berendt, driver of the car, testified that, when the accident occurred, he was driving the Ford automobile; that the delivery body was about six or seven feet long.

"I had been delivering drugs with this Ford car on the night of the accident. I had a Ford roadster, and it had a light delivery body behind, to put stuff in we had to deliver, or to get something from the drug store. I had not been engaged in anything but delivering drugs that night."

In examination of the witness Brooks, who conveyed plaintiff in his Hudson Super Six, counsel for plaintiff referred to the Ford automobile as the "Reppert car," and such designation was not challenged.

With this evidence in the record, the court, in presenting the issues to the jury, stated plaintiff's claim in her petition that she was struck by an automobile owned by the defendant and operated by a servant of the defendant, and submitted the issue in an instruction reading:

"You are instructed, as a matter of law, that the acts of a servant or employee while in the usual course of his employment makes his principal liable; and in the case at bar, if you find by the preponderance or greater weight of the evidence that the servant or employee of the defendant, Gus Reppert, was negligent in the manner as herein instructed, then such negligence, if any, on the part of the servant or employee would be the negligence of his employer."

It will be observed that the court, in such instruction, assumed that it had been shown in evidence, without dispute, and instructed, as a matter of law, that defendant was the owner of the car, and that Berendt, driver of the car at the time of the accident, was in the employ of defendant, acting within the scope of his employment. We cannot say that a fair inference might not be drawn from the evidence, without anything to challenge such inference, that defendant was the owner of the car in question, and that the driver was in his employ; or that the court erred by assuming, in the above quoted instruction, that defendant was the owner of the car, and that the driver was his servant. No mention was made of these matters by defendant in his conversations, before the case was begun. Defendant's answer was a general denial, which was sufficient. But specific denial that defendant was the owner of the car, or that the driver was his servant, if, in fact, defendant was not the owner of the car and the driver was not his servant, would have ended the case. The slightest investigation would have developed the truth. It is strikingly notable that defendant did not specifically raise the question until in his motion for a new trial.

Appellant does not seriously urge that there was not sufficient evidence of negligence on the part of the defendant, through the driver, if defendant owned the car and the driver was in his employ, to take the case to the jury. As we understand counsel, they do not contend that the plaintiff was guilty of con-

3. NEGLIGENCE:
contributory
negligence:
guarding against
danger.

tributory negligence, as a matter of law, in attempting to cross the street at the time and place in question, but strenuously urge that, considering all the facts and circumstances, fair-minded men could not reasonably disagree upon the proposition that the plaintiff had failed to negative contributory negligence; that plaintiff did not show herself free from contributory negligence. Nearly all of the evidence pertaining to the accident directly or indirectly bears upon the issue of contributory negligence, as well as upon the negligence charged against defendant.

We deem it unnecessary to set out the evidence, further than to say that we have examined the evidence in the abstracts and also the transcript. The evidence presented questions for the jury.

Plaintiff testified that, when she got out of the Hudson car on the north side, she looked both east and west, and did not see any car coming; that she walked east to the back of the car, and then started directly south across the street; that she did not know how far she could see west; that she looked to the east and west for moving vehicles, before proceeding to cross the street, and did not see any; that, when she got out of the car, it moved on west immediately; that she started across the street south; that she remembered taking a couple of steps when she was struck; that that was all she knew; that she did not know how far west she could see; that she looked in both directions, when she got out of the Hudson car, but that she did not know whether she looked again to the west or not; that the only time she looked to the west was immediately after she got out of the Hudson car on the north side of it; that, after she got out of the car, she walked to the east and then toward the south, around the back end of the car; that the Hudson car had a top, inclosed with curtains; that, when she looked to the west up Woodland Avenue, she could not see up the street; that she never at any time saw the Ford car that struck her. On cross-examination, plaintiff was pressed to tell in just what direction she was looking at the time she was struck. She answered, ''I do not remember when I was struck.'' She said that, just before she was struck, she was thinking about going to the home of a girl friend on the southeast corner of the street intersection.

She was asked in what direction she was looking just before she was struck. She answered, "Looking straight ahead of me."

Brooks, driver of the Hudson car, testified that, when he was pulling up to the curb, just before he stopped his car, he could see the lights of the Ford car; that it was a dark night, and misty or hazy; that he saw the rays of light coming over the hill from the west; that he could see the lights on the car before it appeared in sight.

Boldrick, who was riding with Brooks in the Hudson car, testified that he first saw the Ford car when it came up over the crest of the hill from the west; that it had ordinary Ford lights; that, about the time the lights reached the crest of the hill, their car started up; that he had no difficulty in seeing the lights of the Ford car; that they were plain and distinct.

Whether plaintiff was guilty of negligence which contributed to the accident and consequent injury, is a very close question, and difficult to determine, under the evidence. We are not prepared to say, after examining the evidence carefully, that it can be said, as a matter of law, that plaintiff was not free from negligence. We think it was a question for the jury to determine. True, plaintiff said that she did not see the Ford coming. According to the testimony of Brooks and Boldrick, she should have seen the lights of the Ford car on alighting from the Hudson car and looking to the west. But we think it was for the jury to determine whether failure by her to look again before she started south across the street was such want of care as to bar recovery, together with other facts and circumstances shown in evidence. The rule of ordinary care did not impose upon plaintiff the burden of being constantly on the lookout, to see if her path was free from danger. In *Wine v. Jones,* 183 Iowa 1166, we said: "A pedestrian is not bound to constantly keep a lookout for approaching vehicles."

The court did not err in refusing to give instructions requested by defendant. So far as they were proper, the instructions requested were covered by the instructions given.

We have considered all of the assignments of error. Although not discussed individually, they are comprehended in the foregoing discussion, except the complaint that the verdict

is excessive. No permanent injury resulted to plaintiff from the accident, except a small scar on her forehead, which she will continue to wear during life, which will cause her no physical pain, and which scar all the doctors testified would gradually become smaller and bleach out, so as to become less noticeable. Plaintiff was in good health at the time of the trial, and weighed more than she did before the injury. The expenses incurred in the way of doctor's and hospital bills were small,—only $269. She lost but little time from her work, valued at $101.25. The damages, therefore, exclusive of pain and suffering and disfigurement, amounted to $370.25. Under the verdict, the jury must have awarded in excess of $2,600 for pain and suffering, and for the scar on plaintiff's forehead. We think the verdict is excessive, and that damages in the amount of $2,000 would be sufficient to fully compensate plaintiff for the injury suffered. But the verdict need not be set aside because of such excessive award of damages. It may be cured by remittitur. It is, therefore, ordered that, if plaintiff shall, within 30 days, file remittitur reducing the damages to $2,000, the judgment of the lower court to the extent of $2,000 will be and stand affirmed. Otherwise, the case will stand reversed and remanded.—*Affirmed on condition.*

Stevens, C. J., Evans and Faville, JJ., concur.