JAMES J. ROBERTSON, Administrator, Appellee, v. LENNIE J. CARLGREN, Appellant.

No. 40670.

FEBRUARY 10, 1931.

*Jones & White* and *C. C. Putnam,* for appellant.

*Chesler W. Whitmore,* for appellee.

KINDIG, J.—On June 22, 1929, Mary G. Robertson, 66 years

of age, the plaintiff-appellee's intestate, was walking on East Main Street in Ottumwa, at the intersection of Fellows Avenue, when she was struck and killed by the defendant-appellant's automobile, then driven by him.

East Main Street in Ottumwa extends in an easterly and westerly direction. Fellows Avenue is a north and south public thoroughfare, running from the north into East Main Street, but does not cross the same and project south thereof. For convenience, there is here set forth a plat showing those streets and the surrounding territory.

At the time in question, appellee's intestate was walking from the south to the north side of East Main Street, near the east line of its intersection with Fellows Avenue, where she was struck by appellant's automobile, which was driven by him westward on the north side of East Main Street. In the northwest corner of the intersection of East Main Street and Fellows Avenue is a garage. Immediately across Fellows Avenue therefrom, in the northeast corner of the intersection, there is a barber shop and pool hall. To the east of the barber shop and pool hall is a vacant half lot, and directly to the east thereof is a secondhand auto storage and garage. East thereof and adjacent thereto is what is known in the record as Kent's Grocery Store. South of East Main Street there is a lumberyard. An approach to the lumberyard from East Main Street is provided near to and a little east of the intersection with Fellows Avenue. This approach is shown on the plat under the designation, ''road to lumberyard.'' The west side of the lumberyard approach is approximately due south from the sidewalk on the east side of Fellows Avenue. As an aid to the understanding, a photograph, showing Fellows Avenue and its junction with East Main Street, together with the pool hall, barber shop, and the approach to the lumberyard, is here inserted.

A single street car line extends along the center of East Main Street. When alighting from a street car, passengers sometimes step onto East Main Street, opposite the approach to the lumberyard. Also several hundred, and possibly 3,000, employees of the packing company daily walk over the lumberyard approach on and across East Main Street at the intersection of Fellows Avenue. Both Fellows Avenue and East Main Street were paved with brick.

During the evening of June 22d aforesaid, the said Mary G. Robertson, together with her son and daughter, drove down Fellows Avenue from the north to East Main Street, then turned to the left, and continued eastward on the south side of East Main Street to a point 30 or 35 feet from Fellows Avenue, where they stopped, and appellee's intestate alighted from the automobile, in order that she might cross the street and make a purchase at Kent's Grocery Store, on the north side of East Main Street, as before located and described. There is a conflict in the evidence concerning where appellee's intestate crossed East Main Street; but, as hereafter will be more fully set forth, the record warrants the jury in finding that she went back to Fellows Avenue and proceeded northward, in line with the sidewalk on the east side of Fellows Avenue. Here she was killed by appellant's automobile, as previously indicated. After Mary G. Robertson died, the appellee was appointed administrator of her estate, and now brings this suit to recover damages for the wrongful death.

Appellee, in his petition, charges appellant with negligence in the following respects. First, he sounded no horn or other warning as he approached Fellows Avenue; second, he operated

his automobile at 25 miles per hour, without reducing the speed at the intersection; third, he failed to have his car under control; and fourth, he did not keep a proper outlook. Appellant denied those allegations, and affirmatively pleaded that appellee's intestate was guilty of contributory negligence. Furthermore, it was pleaded by appellee that his intestate did not see the approaching automobile which killed her, and appellant admitted that allegation.

So far as this appeal is concerned, there are only two grounds for reversal which demand consideration. They are: First, appellant's freedom from negligence; and second, appellee's intestate's contributory negligence. No ground for reversal is predicated upon the admission of evidence or the giving of instructions. Therefore, only the above-named two propositions are presented for discussion. Such are the issues to be determined on this appeal.

I. Was appellant guilty of negligence? Manifestly, the evidence presents a jury question. For at least three years appellant was familiar with East Main Street and its intersection  with Fellows Avenue. On the night under consideration, appellant, an experienced driver, had control of an automobile with four-wheel brakes in good working order. There were lights on his car, as well as on other automobiles in the vicinity. Street lights were brightly shining at the intersection, and electric lights were glowing on the various building fronts. Witnesses who testified could clearly see the entire intersection, as well as the streets beyond. Under the circumstances presented in the record, the jury could well find that appellant could have seen appellee's intestate, had he kept a proper outlook. That he did not keep such outlook is fully substantiated by the record.

It is claimed by appellant that he did not see the woman before the impact. His failure to see her was not brought about by darkness, fog, dust, glaring lights, or anything else that sometimes confuse automobile drivers. Apparently he was not looking forward, but in another direction. According to the testimony of Alexander Robertson, the husband of Mary G. Robertson, appellant called at the Robertson home Sunday evening after the accident, and there, during a conversation with the family, stated:

"I [appellant] never did see her [appellee's intestate] until

after the car hit her. * * * I [appellant] was looking over on the other side. I didn't see her until after she was under the car.''

Likewise, Edith Robertson testified concerning the same conversation, and declared:

''Father said [to appellant], 'How did this accident happen?' He [appellant] said, 'I don't know;' and father said, 'Didn't you see mother [appellee's intestate]?' [Appellant said] 'No.' 'What and why [question by Mr. Robertson] was the reason you [appellant] didn't see her [appellee's intestate]? Was there a car or something to keep you from seeing her?' He [appellant] said, 'No, I didn't see a car, I [appellant] didn't see her [appellee's intestate].' And [Mr. Robertson] said, 'Why didn't you see her?' He [appellant] said, 'I was looking [northward] at Fellows Avenue, looking for another car to come down, or to turn onto Main Street.' ''

Will Robertson testified to the same effect.

A stop sign was located on Fellows Avenue, north of East Main Street. In this block, as before explained, there were buildings on the north side of Main Street, which would have made useless the alleged observations, and prevented appellant from seeing up Fellows Avenue before he reached the intersection. Additional to the foregoing, it does not appear that there was an automobile on Fellows Avenue likely to come in contact with appellant, which would in any way distract his attention. The jury could consider the useless observations to the north and the absence of diverting circumstances, when determining whether or not appellant was keeping a proper outlook at the intersection. Although there was a stop sign on Fellows Avenue, we do not here suggest or decide that the appellant should not make proper observations to the north, consistent with his duty to look forward, as well. However, in view of the surrounding conditions, a jury well could find that there was no diverting circumstance tending to cause the appellant to refrain from making any observations straight forward. Moreover, as before said, appellant was driving at the rate of approximately from 20 to 25 miles per hour, as he approached the intersection, yet at no time until after the accident did he lessen that speed. Thus he operated the automobile, although at the time there was a city ordinance de-

claring that the pedestrian should have the right of way over the intersection. Something is said in appellant's argument about the wrongful admission of this ordinance into the evidence. However, the record indicates that the ordinance was adopted by the city, and published. Furthermore, there is no assigned ground for reversal based upon the inadmissibility of this ordinance. Consequently, if there is error in this respect, we are not permitted to consider it. *Blomgren v. City of Ottumwa*, 209 Iowa 9; *State v. Terry*, 207 Iowa 916 (1. c. 923). Hence, so far as this appeal is concerned, it must be considered that the ordinance was properly admitted into the record. Because of the facts and circumstances thus presented, the jury could find, if they so elected, that appellant did not keep a proper outlook, and failed to control his automobile in such a manner as to give appellee's intestate the right of way over the intersection. Nor did appellant, although not looking, warn pedestrians who might be upon the intersection that the automobile was approaching. Therefore, this court cannot say, as a matter of law, that the appellant was not guilty of negligence. See *O'Hara v. Chaplin*, 211 Iowa 404; *Altfilisch v. Wessel*, 208 Iowa 361; *Handlon v. Henshaw*, 206 Iowa 771; *Roberts v. Hennessey*, 191 Iowa 86; *Wine v. Jones*, 183 Iowa 1166.

But appellant argues that, even though he might be negligent under the facts above stated, yet, under the actual circumstances, he was in no way careless. What appellant here means is that appellee's intestate, first, crossed East Main Street, not at Fellows Avenue, but some distance east thereof; and second, ran into the side of his car. By assuming this position in the argument, appellant proceeds on the theory that appellee's evidence should be ignored, and his own alone considered. Those two propositions thus advanced by appellant will now receive consideration in the order above named.

First, appellant maintains that it was not incumbent upon him to keep the same vigilance between intersections as is otherwise required at the juncture of the two streets. For support of this contention, appellant refers to the testimony of his witness Ernest Manns, who, among other things, said:

"I am general superintendent of John Morrell & Company. * * * On the 22nd day of June, 1929, when the lady [appellee's intestate] * * * was injured in an automobile accident, * * * I

was in that neighborhood. I was standing on the sidewalk between the barber shop on the corner of Fellows Street and Kent's Grocery [east of the barber shop on the north side of the street, as previously explained]. At that time, I saw Mrs. Robertson coming across the street. Mrs. Robertson got out of a Ford coupé car on the south side of the street, about 30 feet, possibly, from Fellows Street. She walked behind the car * * * directly across the street, towards the place where I was standing, on the north side. She [appellee's intestate] was walking apparently looking down at the ground,—seemed to be paying no attention to the cars that were coming in either direction; and she walked directly in the front fender of the south side of the car [appellant's car] that was coming from the east. When she stepped against the car, she threw out her arm and grabbed the fender of the car, made a slight noise, yell or scream, and she swung over in front of the car,—kind of somersaulted over the front end of the fender into the car. Immediately, almost, the car stopped, after it seemed to strike her, and I ran across from the place where I was standing to the car, and said to the driver of the car * * * 'Back up your car; there is a woman under your car.' * * * When I spoke of her getting out of the car 30 feet from Fellows Street, I meant by that, east of Fellows Street.''

Without entering upon a discourse concerning appellant's liability to watch for pedestrians between streets (*Handlon v. Henshaw* [206 Iowa 771], supra; *Wine v. Jones* [183 Iowa 1166], supra; *Roberts v. Hennessey* [191 Iowa 86], supra; *O'Hara v. Chaplin* [211 Iowa 404], supra), it is enough here to say that the jury were warranted in finding, regardless of appellant's evidence above set forth, that the appellee's intestate was walking on the intersection, when struck by the automobile. Appellant's witness Ernest Manns testified that appellee's intestate was attempting to cross East Main Street about 30 feet east from Fellows Avenue. On the other hand, however, there are many facts and circumstances which tend to overcome the testimony of that witness.

Soon after the accident, appellant went to police headquarters, and made a report. This report was written by a policeman, or desk sergeant. After the same was prepared, the appellant first read and then signed it. Contained in the report are the following statements, over appellant's signature:

"Date of Report, June 22, 1929.

"Date of Accident and time: June 22, about 8:30 P.M.

"Place of accident: Corner East Main and Fellows Avenue."

When the matter was fresh in appellant's mind, he apparently stated to the Ottumwa police officials that the accident occurred at, rather than between, intersections. Will Robertson and his sister testified that their automobile stopped south of the barber shop, and their mother, alighting from the vehicle, walked around to the rear thereof. Thus she would be near the intersection before starting north. Also, other witnesses indicate that the automobile, with appellee's intestate under it, stopped near the center of Fellows Avenue. Again, it appears in the record that, after hitting the woman, appellant's car proceeded a few feet to the west. Fellows Avenue is 20 feet wide, from curb to curb, and 50 feet, from lot line to lot line. So, if appellant's automobile struck appellee's intestate on the Fellows Avenue east sidewalk line at the intersection, it probably carried her to near the center of the two streets before stopping. At least, there is substantial evidence in the record to support the jury's finding to that effect.

When we return to the second proposition argued by appellant in the chronological order above named, it is recalled that he continues his discussion at this juncture by maintaining that his negligence did not cause the unfortunate accident, because appellee's intestate, rather than being run over by, walked directly into, the automobile. Wherefore, appellant concludes that he, in all events, under those circumstances, is not guilty of negligence. For support of this contention, appellee refers to the testimony of his witness Ernest Manns, who stated that appellee's intestate walked directly into appellant's automobile, grabbed hold of the same, and was somersaulted in front thereof, as seen by the quoted testimony above. There is a dispute in the record at this point, however, concerning how the accident happened. Appellant, when making the report to the police aforesaid, in addition to the statements previously quoted, also said, in his written version of the accident:

"Explain in detail how the accident occurred: 'I [appellant] was going west on East Main Street. Mrs. A. Robertson

[appellee's intestate] *stepped in front of my car at Fellows and East Main.'* " (The italics are ours.)

Hence it is seen that the appellant contradicts his own witness, Manns.

James Robertson, on rebuttal, testified about a conversation which he had with appellant's witness Manns on July 9th after the accident. During the examination, Robertson said:

" * * * In the course of [the conversation, Mr. Manns] made the statement, in substance and effect, that he stood on the north side of East Main Street, about half way between Fellows Avenue and Kent's store, and saw my mother [appellee's intestate] come across East Main Street, going north, about the intersection of Fellows Avenue, and that, after she got part way across the street, a west-bound automobile came along at a very rapid rate on the north side of Main Street, with its lights shining brightly, and as it approached toward her [appellee's intestate], he [Manns] saw her raise her hands, as though trying to shield her eyes from the glare of that automobile, and in that position she walked until [appellant's car] hit her."

The net result of that rebuttal testimony is that appellant's witness Manns contradicted himself. This witness was standing on the north side of the street, east of where the accident occurred, while appellant's car was between the witness and appellee's intestate, who was proceeding northward. It would be a little difficult for the witness to observe just what did take place on the other side of the car. Obviously, it is most unlikely that appellee's intestate would extend her arm to the moving car and then somersault over in front of it. At least, the circumstances and contradicting testimony aforesaid are sufficient to raise a jury question as to whether appellant's witness Manns correctly described the manner in which the accident happened.

The appellee, as plaintiff, when we are considering a motion to direct a verdict against him, "is, of course, entitled to have the evidence considered in the light most favorable to * * * [him]." *Holderman v. Witmer,* 166 Iowa 406 (l. c. 409). No attempt has been made to set out all the evidence, but only an outline thereof has been suggested. Manifestly, under the circumstances there is no reversible error because the court

permitted the jury to pass upon the question of appellant's negligence.

II.  It being assumed, then, that there was sufficient evidence concerning appellant's negligence, did the contributory negligence of appellee's intestate bar a recovery? That is the next question. A careful review of the record compels the conclusion that a jury question here also is presented.

As the basis for his argument on contributory negligence, appellee refers to the testimony given by the witness Ernest Manns, aforesaid. During his testimony, it will be recalled, Manns declared that appellee's intestate, proceeding with her head down, walked directly into the side of appellant's automobile. Using that testimony as the basis for his argument, appellant insists that there was contributory negligence. Here appellant relies upon many cases, including *Pettijohn v. Weede*, 209 Iowa 902; *Klink v. Bany*, 207 Iowa 1241; *Bishard v. Engelbeck*, 180 Iowa 1132; *Sheridan v. Limbrecht*, 205 Iowa 573; *Ryan v. Trenkle*, 203 Iowa 443; *Livingstone v. Dole*, 184 Iowa 1340; *Disher v. Kincaid*, 193 Iowa 83; *Brekke v. Rothermal*, 196 Iowa 1288; and *Borland v. Lenz*, 196 Iowa 1148.

Clearly, however, those cases do not sustain appellant's contention. They deal with situations where the plaintiff, by suddenly appearing in the defendant's path, created an emergency which the latter could not avoid. Illustration of the foregoing may be found in a man's dash from a moving street car into the path of an automobile, or a child's sudden run from a place of safety directly in front of an automobile, etc. In the case at bar, the jury could well find, as before suggested, that appellee's intestate did not run into the side of the car, but, while walking at the street intersection, was struck by the front part of appellant's vehicle. The facts contained in the record distinguish this case from those relied upon by appellant.

Three contentions are contained in appellant's argument: First, that appellee's intestate crossed between, rather than at, the intersections; second, that she walked directly into the side of appellant's automobile; and third, that she was looking at the ground, rather than to either side, while going across the street. Two of those theories have already been discussed under Proposition I, and it is unnecessary to further pursue the matter

here. It is enough to say, therefore, that a jury question was presented: First, concerning where appellee's intestate crossed the street; and second, whether she ran into the automobile or it ran against her. So far as those two propositions are concerned, therefore, a jury question was clearly presented regarding the contributory negligence of appellee's intestate. That being true, there is left but one further matter for consideration.

Did appellee's intestate make proper observations for her safety when crossing East Main Street at the time in question? Although courts sometimes declare pedestrians guilty of contributory negligence as a matter of law, it is to be remembered that "the presence or absence of contributory negligence, generally speaking, is peculiarly a question for the jury, rather than the court, to detect and settle." *Murphy v. Iowa Elec. Co.*, 206 Iowa 567, 571. Furthermore, we said in *Murphy v. Iowa Elec. Co.*, supra, on page 572:

"If there is a conflict in the evidence as to what the person accused of contributory negligence did or did not do, the question is then one for the jury. Likewise, even though it is known what was done by that individual in this regard, yet if his conduct is such that there may fairly be different opinions with respect to it, and one man honestly and reasonably says it was in accord with ordinary prudence, while another, just as sincerely, and with equal reason, contends it was not, then there is a jury question."

Guided, then, by that standard, was appellee's intestate guilty of contributory negligence as a matter of law, in the case at bar? Plainly not. Under the evidence, the jury could find, if they so elected, that this woman, at the time in question, was crossing East Main Street on the line where the sidewalk would be extended along the east side of Fellows Avenue. There were many automobiles going to and fro over East Main Street. An automobile went eastward on the south side of East Main Street just a moment before the accident in question. Appellee's intestate avoided that car, and proceeded northward to the street car line. At this point, her own safety required that observations be made to the east and to the west. After crossing the street railway tracks, it was necessary again for appellee's intestate to use reasonable care in avoiding on-coming cars. According to the

exhibits, the pavement on this street was of brick, and in places the same was very rough and uneven. No doubt the old lady, as stated by the witness Manns, was paying attention to her steps, as she proceeded along; but she did not continually look down at the ground, for, as again said by Manns, in a private conversation with James Robertson, as shown by the rebuttal testimony, "after she [appellee's intestate] got part way across the street, a westbound automobile [appellant's] came along at a very rapid rate on the north side of Main Street, with its lights shining brightly, and as it approached toward her [appellee's intestate], he [Manns] saw her raise her hands, as though trying to shield her eyes from the glare of that automobile, and in that position she [appellee's intestate] walked until [appellant's car] hit her." Moreover, there is evidence to the effect that other automobile lights, shining from the opposite direction, would tend, under the circumstances, to confuse appellee's intestate.

Because of those facts and circumstances, we cannot say, as a matter of law, that the old lady conducted herself in a negligent and careless manner. Her conduct was such that the jury might sincerely, reasonably, and honestly say that she acted, under the circumstances, with ordinary prudence and care. A jury question was clearly presented. *O'Hara v. Chaplin* (211 Iowa 404), supra; *Murphy v. Iowa Elec. Co.* (206 Iowa 567), supra; *Roberts v. Hennessey* (191 Iowa 86), supra; *Gilbert v. Vanderwaal*, 181 Iowa 685.

It was requested by appellee that this court should add 15 per cent to the judgment of the district court because the appellant prosecuted this appeal vexatiously, and for delay only. We fail to find the basis for this relief, and therefore the motion is overruled; but the judgment of the district court below should be, and hereby is, affirmed.—*Affirmed*.

EVANS, STEVENS, DE GRAFF, ALBERT, MORLING, and WAGNER, JJ., concur.

FAVILLE, C. J., and GRIMM, J., concur in result.