C. E. SWAN, Appellant, v. DAILEY-LUCE AUTO COMPANY et al., Appellees.

No. 44242.

90

FEBRUARY 8, 1938.

SUPPLEMENTAL OPINION ON PETITION FOR REHEARING AND RE-
HEARING DENIED, SEPTEMBER 30, 1938.

Garrett & Elson, for appellant.

Murrow & Miles and W. H. Tedrow, for appellees.

KINTZINGER, J.—This is the second appeal of this case; the first is reported in Swan v. Dailey-Luce Auto Company, 221 Iowa 842, 265 N. W. 143. As the facts in this case are sub-stantially identical with those involved in the case on the former appeal, we will not enter into an extended review thereof here, but for a further review thereof will refer to the facts set out therein.

At the close of plaintiff's evidence, defendants filed a motion for a directed verdict upon the following grounds: (1) That plaintiff has failed to establish any negligence on the part of defendants' driver; and (2) that he has failed to show himself free from contributory negligence.

Plaintiff, a man over seventy-seven years of age, had just left a movie theatre at about 10 o'clock p. m., on March 29, 1933, and walked to the street corner for the purpose of crossing the street. Before crossing, he stopped on the edge of the street under the glare of the flood lights of a filling station and looked up and down the street; he saw no car approaching from either direction and then started to walk across a 50-foot street. When he reached the center of the crossing, he continued the balance

of the way on a "dogtrot" without looking up. He came within one step of reaching the opposite side of the street when he was struck by defendants' automobile approaching the crossing from the north at a speed of about 20 or 25 miles an hour. At the time of the collision defendants' car was traveling on the extreme right or west side of Brown street, also called highway No. 65. This highway comes to a fork in the road at about the place where plaintiff stood when he looked north.

The record shows without dispute that the defendants' driver, as he approached the crossing from the north, saw plaintiff standing on the east edge of the road 180 feet away by the lights at the filling station. The record also shows that defendants' driver had a clear view of the entire crossing while plaintiff was crossing the street.

I. Appellant contends that the court erred in holding there was not sufficient evidence to submit the question of defendants' negligence to the jury.

Among the acts of negligence alleged are the following: (1) That defendants' driver failed to have his car under control and failed to reduce the speed thereof so that the same could be stopped within the assured clear distance ahead; and (2) that he failed to keep a proper lookout for pedestrians who might be traveling on said highway.

Defendants' driver admits that he saw plaintiff standing on the east side of the crossing when he was 180 feet away. He then says he did not see him again until he suddenly "popped up" in front of him on the crossing. Another witness who was standing on the sidewalk was as far, if not farther away, from plaintiff than defendants' car, and he saw the plaintiff traveling across the street from the time he left the east side until he was struck on the west side of the street.

Defendants' driver does not explain his failure to see plaintiff walking across the street, although he contends that plaintiff must have seen him. There were no obstructions whatever between the crossing and defendants' car from the time he first saw the plaintiff 180 feet away and the time he struck him. Therefore, if plaintiff could have seen defendants' car, it is obvious that the defendants' driver could also have seen the plaintiff. There was a statutory duty on the part of defendants' driver to look for pedestrians on the street. If he did not see

plaintiff as he was crossing the street, he could not have looked, and this specific act of negligence was surely one for the jury.

The statute, Code 1935, section 5029, also required defendants' driver to drive his car at a speed not greater than would permit him to bring it to a stop within the assured clear distance ahead. If the driver of defendants' car first saw the plaintiff 180 feet away when the plaintiff started to cross the street, it was his duty to reduce the speed of his car to such a rate that it could be stopped within the assured clear distance ahead.

He attempts to avoid his duty under this statute by making the bald statement that he did not see plaintiff while he was crossing the street until he "popped up" in front of him just as the collision occurred. In order to do this, the jury might have found that it was impossible for defendants' driver not to have seen him again, unless this old man leaped clear across the street so quickly that defendant was unable to see him while so doing.

The undisputed evidence shows that the entire crossing could be seen for a distance of 180 feet by the driver of an automobile traveling upon the westerly side of the center line of highway No. 65. When defendants' driver was 180 feet north of the crossing, he saw plaintiff standing under the lights of a filling station at a point about 50 feet from the west side of the street. The evidence tends to show that at about the time defendants' driver saw plaintiff on the crossing 180 feet away the plaintiff started to walk westerly across the street, and that, when he reached a point about one step from the west side of the street, he was struck by defendants' car. There is nothing in the record showing any obstructions in the roadway interfering with defendants' view of plaintiff while the latter was crossing the street.

Without discussing the matter in further detail, it is our conclusion that it was for the jury to say whether or not defendants' driver has shown a legal excuse for not stopping his car within the assured clear distance as required by statute.

That this was a jury question was determined upon the former appeal of this case, wherein we said:

"Under the assured clear distance statute involved in this action, it was the court's duty, under the circumstances disclosed by the evidence in this case, to have instructed the jury

that, if the defendant failed to drive his .car at such a speed as to enable him to bring it to a stop within the assured clear distance ahead, then the defendant was guilty of negligence as a matter of law, *unless* he showed a legal excuse for not complying therewith, in accordance with the meaning of 'legal excuse' as hereinabove referred to.''

The court erred in failing to submit this question to the jury.

(2) Under the record in this case the question of the negligence of defendants' driver in failing to keep a proper lookout for plaintiff as he was crossing the street was also for the jury.

II. Appellant also contends that the court erred in failing to submit to the jury the question of plaintiff's freedom from contributory negligence.

The undisputed testimony shows that the plaintiff, before starting across the street, looked both up and down the street and saw no automobile approaching from the north. He then stepped off the sidewalk, walked to the center of ,the crossing, and then continued on a ''dogtrot'' across the rest of the street. Plaintiff positively testifies that when he looked north he did not see the approaching car, but defendants contend that under the physical facts he must have seen it. Plaintiff at the time he looked north was standing in the glare of the lights at the filling station. He testified that:

''If there had been a car *within the lighted area* around this station I think I could have seen it. * * * When I was looking up north it was dark up there except for those street lights. * * * I couldn't tell just how far I could have seen that night. It was a cloudy night. It was light where I was standing when I stopped to look. Away from those lights it was dark. There wasn't any car that I saw in the area lighted by the lights from the filling station.''

Upon the ruling on a motion for a directed verdict, the evidence should be considered in the light most favorable to appellant. Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N. W. 220; Albright v. Chicago, R. I. & P. Ry. Co., 200 Iowa 678, 205 N. W. 462; Middleton v. Omaha & C. B. St. R. Co., 209 Iowa 1278, 227 N. W. 915; Robertson v. Carlgren, 211 Iowa 963.

234 N. W. 824; Holderman v. Witmer, 166 Iowa 406, 147 N. W. 926.

Plaintiff was standing in a very brightly lighted area looking out into the darkness on a cloudy night; he did not see defendants' car approaching from the north. Under such circumstances it was peculiarly a question for the jury to say whether or not he, in the exercise of ordinary care, could have seen the defendants' car approaching from the north. It may also be said that although he could have seen a car approaching from the north at a distance of 180 feet away, it can hardly be said as a matter of law that he, as a reasonably prudent person, had no right to believe he could get across the street in safety with a car that far away. It cannot be said that a pedestrian is, as a matter of law, guilty of contributory negligence simply because he saw or could have seen a car approaching 180 feet away.

The plaintiff covered half the distance across the street without any trouble, and then started on a ''dogtrot'' over the rest of it. The evidence also shows that he almost made the entire crossing and reached to within one step of the opposite side of the street. Under such circumstances the jury might have found that he had a right to assume that he could get across the street in safety.

A person crossing a street is not required to anticipate negligence on the part of another, but is justified in assuming that the other will not violate the law. 45 C. J. 954; Townsend v. Armstrong, 220 Iowa 396, 260 N. W. 17; Hanson v. Manning, 213 Iowa 625, 239 N. W. 793; Shields v. Holtorf, 199 Iowa 37, 201 N. W. 63; Pixler v. Clemens, 195 Iowa 529, 191 N. W. 375; Hartman v. Red Ball Transportation Co., 211 Iowa 64, 233 N. W. 23.

Plaintiff was not required to keep a *constant* lookout for approaching cars from both directions. This is self-evident because he cannot look both ways at the same time. A pedestrian is only required to exercise ordinary care and whether he did so is ordinarily a question for the jury. Wine v. Jones, 183 Iowa 1166, 162 N. W. 196, 168 N. W. 318; Spiker v. City of Ottumwa, 193 Iowa 844, 186 N. W. 465; Smith v. Spirek, 196 Iowa 1328, 195 N. W. 736; Read v. Reppert, 194 Iowa 620, 190 N. W. 32; 42 C. J. 1152. In an almost identical case filed at this sitting of the court we held that the question of contributory negligence

was for the jury. McCormick v. Kennedy, 224 Iowa 983, 277 N. W. 576.

In Read v. Reppert, 194 Iowa 620, loc. cit. 627, 190 N. W. 32, 35, we said:

" * * * plaintiff said that she did not see the Ford coming. According to the testimony of Brooks and Boldrick, she should have seen the lights of the Ford car on alighting from the Hudson car and looking to the west. But we think it was for the jury to determine whether failure by her to look again before she started south across the street was such want of care as to bar recovery, together with other facts and circumstances shown in evidence. The rule of ordinary care did not impose upon plaintiff the burden of being constantly on the lookout, to see if her path was free from danger. In Wine v. Jones, 183 Iowa 1166, 162 N. W. 196, 168 N. W. 318, we said: 'A pedestrian is not bound to constantly keep a lookout for approaching vehicles.' "

If the evidence tends to show that a pedestrian may reasonably expect to get across the street in safety, he is not, as a matter of law, required to wait for all approaching vehicles from both directions before attempting to cross.

The evidence tends to show that defendants' car, as it approached the crossing, was not in the center of the space between the middle of the road and the west side, and that if it had been, plaintiff would not have been struck, because he was so close to the west side of the street when struck that, if the car had been traveling near the center of the street, it would have passed by without striking him. Under the facts, the jury might have found that, if defendants' car had been traveling on the center portion of the road, plaintiff would have been in a place of safety.

Many of the considerations applicable to this class of cases are set out in a quotation from O'Dowd v. Newnham, 13 Ga. App. 220, 80 S. E. 36, in McCormick v. Kennedy, supra, and will bear repeating here:

"The pedestrian, like the driver of an automobile, in the exercise of ordinary care for his own safety and for the safety of others, is required to anticipate the presence of persons and vehicles upon the highway. But it cannot be said that the duty

which is upon the pedestrian is as urgent as that devolving upon the driver of an automobile, for the foot passenger's action or inaction in the premises is far less important to the other users of the highway. The impact of the body of a pedestrian absorbed in his own meditations, upon a passer-by, might be measurably uncomfortable, but it would seldom be hazardous to either life or limb; whereas the impact of an automobile in motion while the driver is asleep might cause as certain death as if the injured person had been wilfully pursued and wantonly crushed. The pedestrian and the automobile have equal rights upon the highway, but their capacity for inflicting injury is vastly disproportioned. It follows, also, from this, that the driver of an automobile cannot be said to be using the highway within his rights, or to be in the exercise of due care, if he takes advantage of the force, weight, and power of his machine as a means of compelling pedestrians to yield to his machine superior rights upon the public highway, designed for the use of all members of the public upon equal terms. Instances are almost a matter of daily occurrence where apparently the drivers of automobiles operate their machines as if they have been granted a right of way over the public highways, and as if it is nothing more than the duty of the pedestrian to yield precedence to the automobile and to stop and wait until the automobile has passed before attempting to proceed in crossing a street or otherwise using the highway. If there is anything in the argument of priority, man was created before the automobile, and, to paraphrase a quotation from Holy Writ, man was not created for the automobile, but the automobile was created for man. Generally, the natural instinct of self-preservation will inspire in the pedestrian a due degree of caution for his own safety, when he is aware of the approach of an automobile, and this the law will require him to exercise. * * * While, therefore, the law requires that a pedestrian and the driver of an automobile shall each anticipate the presence of the other upon the public highways, and that neither shall do any act likely to jeopardize the safety of the other, still, on account of the great disparity in their respective capacities to inflict injury, the exercise of ordinary diligence on the part of the pedestrian to look out for automobiles does not necessarily require as continuous caution as is requisite to enable an automobilist to fulfil the definition 'ordinary diligence' as applied to

one having in his charge a dangerous and death-dealing instrumentality.''

We realize this presents a troublesome question, but the question of contributory negligence is ordinarily one for the jury. Altfilisch v. Wessel, 208 Iowa 361, 225 N. W. 862; Robertson v. Carlgren, 211 Iowa 963, 234 N. W. 824; Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 249 N. W. 220. It is our conclusion, without discussing it further, that the questions of negligence and contributory negligence under the evidence in this case were questions of fact for the jury.

Appellees' motion to dismiss the appeal is overruled.

For the reasons hereinabove set out, we are constrained to hold that the court erred in failing to submit these questions to the jury. The judgment of the lower court is therefore hereby reversed.—Reversed.

STIGER, C. J., and ANDERSON, DONEGAN, SAGER, and MILLER, JJ., concur.

## SUPPLEMENTAL OPINION.

PER CURIAM.—The petition for rehearing is overruled with the following supplement:

Appellees contend that we misconstrued the record in assuming that appellant *walked* half way across the street before he started on a ''dogtrot''. One of the witnesses said:

''After I first saw Mr. Swan I noticed him stop there and didn't pay any more attention to him. * * * The second time I looked at him * * * Mr. Swan was in the neighborhood of the middle of the street, in a dogtrot.''

Assuming, however, that he started on a dogtrot immediately, we think it immaterial when he commenced to trot because the record shows that before he started across the street he looked both ways and saw nothing. The appellant said:

''When I stood there and I looked up and down the street I did not see an automobile anywhere. * * * It was light there at that time because the filling station had a row of lights all around it and there was a street light there. I was practically under the street light. I was within the large circle of lights made by the filling station. When I looked up north and south

98

* * * to see if there was anything coming I saw nothing. If there had been a car within the lighted area around this station, I think I would have seen it.''

According to some of the evidence appellees' car at that time was about 180 feet away. Appellant was an old man. It was a dark and cloudy night. Therefore, if we assume that he started across the entire street on a dogtrot, it would not affect the result, because the record shows that *he came within one step of the opposite side* of the street before he was struck.

We cannot say as a matter of law that an old man, on a dark and cloudy night, after looking up and down the street and seeing no automobiles in sight, was guilty of contributory negligence simply because he proceeded across faster than a walk.