EVERETT YALE, Appellee, v. EDWARD J. HANSON et al., Appellants.

No. 44960.

DECEMBER 12, 1939.

Baron & Bolton, for appellee.

Hallagan, Fountain, Stewart & Cless, and Shull & Stilwill, for appellants.

SAGER, J.—Jackson street is one of the main thoroughfares in Sioux City, 42 feet wide between curbs, marked as a boulevard, and carrying a heavy burden of traffic. Plaintiff, an electrician, 45 years of age, and for 21 years a resident of Sioux City, was thoroughly familiar with this street and the extent to which it was used as an arterial highway. He traveled it nearly every day.

At about 8 to 8:30 o'clock on the evening of December 23, 1937, plaintiff was driving south in the right or west lane of this street. The evening was cloudy with a light mist or sleet causing a gathering of ice on windshields. The street was slippery and the weather bad. At or about the time appellee reached an intersecting street (15th), a car driven by one Galinsky, coming from the south struck his car. After being hit, plaintiff continued south across the intersection and parked on the west side of the street near a filling station. Galinsky went north on the other side of the street to about the middle of the block. This controversy does not arise out of this collision, and what has been narrated is set out to give the background of plaintiff's movements before he was hit by the Hanson car.

Plaintiff details his movements as follows:

"Then after I had parked my car, I walked across to the east side of the street and then north down to Galinsky's car, and he was opening the door to get out of his car so then he and I came back up toward the direction where my car was. When this accident happened, we were standing out there in the street talking about the first one [the collision between the cars of plaintiff and Galinsky] and looking at the tracks. It is a fact that we were engaged in some argument and discussion there as to whose fault that was, and that was the thing that I was interested in at that time, was this discussion I was having with Galinsky. It is true that I was not thinking about anything else at that time except trying to figure out whose fault that was or why he hit me."

In locating his position at the time, he said:

"We walked back down the east side of Jackson Street to

about the line of the sidewalk on the north side of 15th Street and walked across Jackson Street and approximately a little more than the center of Jackson Street, west of the center of Jackson Street, to approximately five or six feet west of the center of Jackson Street."

There was a street light on the northeast corner of the intersection, and on the southwest corner a well-lighted oil station.

While in the position stated, and while Galinsky and plaintiff were surveying the marks on the pavement, both were struck from behind by an automobile driven by Eugene Hanson. Up to that time, plaintiff testified, there had been no warning of any kind of anyone's approach from the north, and he observed no movement of vehicles or pedestrians in that vicinity, though defendant claims that as he approached the intersection a car came from the south making a glare on his windshield. All witnesses agree that at the time plaintiff was struck, he was in the west or right lane of travel. On cross-examination, plaintiff testified as to what he was doing when struck:

"I was looking down at the pavement immediately in front of me, looking down and south of where I was standing. I was facing south."

And continuing:

"I didn't hear anything coming behind me. I did not see the car that hit me.

"Q. And from the time that you got over there to the place where you stood and talked to Mr. Galinsky in this second accident, you were looking south, weren't you? A. Most of the time, yes sir. During that minute or minute and a half that I was standing there, I had been looking south and facing south most of the time."

On redirect examination, his testimony was that he looked around occasionally to see if any cars were coming and saw none. And on re-cross-examination:

"I was facing looking south when the automobile struck me, and I had been standing there and talking to Galinsky just during this minute or minute and half facing south and looking

at the tracks except for the time when I would glance around occasionally.

"Q. Well, did you ever look north? A. Yes, sir.

"Q. When did you look north? A. I wouldn't know."

He stated further that when he and Galinsky first arrived at the place where the Hanson car hit him, he looked north, and that there were other times but he was not able to state just when.

Jackson street, he said, was level and "you can see north from that intersection for many blocks so far as there being any hills or obstructions."

Galinsky's testimony differs somewhat. He says they were standing at that time about 12 or 14 feet west of the center of Jackson street; and that the lights were "pretty good" at the intersection. Galinsky said he was coming north on Jackson street and at or near the intersection, his car came in contact with that of the plaintiff. Parking his car as related above, he got out and went over to meet plaintiff who was then approaching. Galinsky thus describes his movements and those of the plaintiff:

"He [plaintiff] got out of his car and I got out of mine and we walked from his car diagonally down the street towards my car, and in that line of travel he walked down diagonally in Jackson Street on a line between his car and my car until he reached the north line of the intersection and he walked along north of the intersection to where he met me and then he turned around with me and we walked back to the southwest. We were taking a diagonal course southwest toward his car."

Hanson did not see either plaintiff or Galinsky until a few feet from them. Plaintiff does not claim to have seen or heard the approach of defendant's car. That Galinsky didn't see or hear is evidenced by his surprised inquiry of Hanson: "Where in the heck did you come from?" Hanson was going very slowly at the time he struck the plaintiff, possibly 10 miles an hour, and moved only three to six feet after the accident.

One Hutmacher, attendant at the filling station on the southwest corner of the intersection, testified that he saw Galinsky and plaintiff after their cars had collided. His testimony is that

after plaintiff and Galinsky met, they came down the center of Jackson street, walking south, and stopped about 15 feet from the curb on Jackson street if it were extended across 15th street, about four or five feet north of the center of Jackson street, thus placing them in the northwest quarter of the intersection at the time they were struck by defendants' car. According to this witness, they stood there for about five minutes. As they stood there arguing, they were facing south, and never faced any other way. Hutmacher says that the paving was ''pretty sleety'' and ''slick'', but, notwithstanding, the Hanson car stopped within three feet after the collision. He saw the lights on the defendants' car when it was in the block north of the intersection. This witness is positive that Galinsky and the plaintiff walked down the middle of the street to the place where they were struck.

Defendants made a motion to direct a verdict in their behalf at the close of plaintiff's case, and renewed it at the close of all the testimony. Both were overruled. They may be summed up as asserting that plaintiff had not only failed to carry the burden of proving freedom from contributory negligence, but that the record affirmatively established plaintiff's negligence directly contributing to the injuries of which he complains. Defendants insist that the trial court was in error in overruling their motions; and appeal.

We thus have before us the question whether, under the facts disclosed, plaintiff was guilty of contributory negligence. We approach its solution with the rule in mind that if reasonable men may differ as to the conclusions drawn from the evidence, the question is for the jury. What was said by us in Stawsky v. Wheaton, 220 Iowa 981, 983, 263 N. W. 313, 314, applies here:

''So many pronouncements have been made on this doctrine that citation of authority is hardly necessary, but see Whitman v. Pilmer, 214 Iowa 461, 239 N. W. 686; Spaulding v. Miller, 216 Iowa 948, 249 N. W. 642; Sheridan v. Limbrecht, 205 Iowa 573, 218 N. W. 278; Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393; Norris v. Lough, 217 Iowa 362, 251 N. W. 646, as some of the later cases in which we have discussed this question.''

818

The parties call our attention to many cases. Of these we cite but a few in addition to those set forth in the Stawsky case: Wine v. Jones, 183 Iowa 1166, 162 N. W. 196, 168 N. W. 318; Reed v. Reppert, 194 Iowa 620, 190 N. W. 32; Fortman v. McBride, 220 Iowa 1003, 263 N. W. 345; Hedberg v. Lester, 222 Iowa 1025, 270 N. W. 447; Swan v. Dailey-Luce Auto Co., 225 Iowa 89, 277 N. W. 580; and Youngman v. Sloan, 225 Iowa 558, 281 N. W. 130.

An examination of these and other decisions discloses none on "all fours" with the case at bar. Each is determined, as all must be, on its own facts.

The case presents, as is apparent, the question: Was plaintiff guilty of contributory negligence? The writer of this opinion is of the view that he was negligent as a matter of law. His years, his experience, his familiarity with the burdens of traffic, and the conditions prevailing that night would seem to suggest not only negligence but heedlessness when he took the middle of this public highway as a proper place to discuss with Galinsky the question, which of them was to blame for the collision between them. The majority of the court, however, holds that there is such a state of facts presented by the record as to make the question one for the jury, and that the trial court was right in submitting it.

This being true, the judgment of the trial court is affirmed. —Affirmed.

OLIVER, C. J., and MITCHELL, RICHARDS, BLISS, and STIGER, JJ., concur.