FRED KORTRIGHT, Appellant, v. E. H. STRATER et al., Appellees.

No. 43146.

NOVEMBER 17, 1936.

REHEARING DENIED MARCH 19, 1937.

604

Holly & Holly, and John McLennan, for appellant.

Gibson & Stewart, for appellees.

HAMILTON, J.—Plaintiff's case rests entirely on his own testimony. The accident occurred about ten o'clock at night of July 26, 1933, as the plaintiff was crossing from the south side of Grand Avenue. He said that he was on his way home at the time, that he had come up from the west along the south side of Grand Avenue, crossed over Thirteenth Street and stopped on the paving near the curb in line with the east sidewalk line, looked both ways, up and down Grand Avenue, saw a car coming from the west and waited for it to pass, then looked both ways again, saw no car approaching, then started north across the street. He first noticed the defendant's car which was coming from the west as the lights from the car flashed in front of him in a northeasterly direction, at which time he stopped and looked sharply west, saw defendant's car about 35 feet from him; he said the car suddenly turned, the lights struck him in the face and he was then hit by the car, the car striking him on the right leg, knocking him down. From this fall he received his injuries.

Just what distance the plaintiff had traveled from the south curb before he was struck is more or less a matter of conjecture from plaintiff's testimony. In his direct testimony he said: "Just about the time I stepped *on the north car line* a light went past me in a northeasterly direction and I looked sharp and I saw a car coming from the west and it was then about 30 feet away from me." In the signed statement which he made while in the hospital he said: "When I was *almost to the center* of Grand Avenue, I looked to the west and saw a car coming toward me from the west, as near as I could judge about 30 or 35 feet." He was then asked this question:

"Now that was as you remembered this accident the day after the accident? A. Yes, sir.

"Q. And that is as you remember it today, too, is that correct? A. Yes, sir."

Again he said on cross-examination: "I was off the curbing a foot or 14 inches when I looked carefully to the west and then I traveled north *approximately 17 or 18 feet,* something like that." Further, on cross-examination he said: "I traveled on and I *passed the center* of Grand Avenue before I was struck." Again on cross-examination he was asked this question: "And you had gone *about 17 feet,* you think from the place where you were standing before this crash took place, or before this collision took place? A. Yes, sir." He was then asked this question: "Assuming that East Grand Avenue from curb to curb at East 13th Street is 48 feet wide, you think then that you had traveled in excess of *24 feet* from the south curb where you were standing? A. Well, I might possibly." On re-direct examination he said: "I was on the *north side* of Grand Avenue, I was from *3 to 5 feet north of the center.* There is a car track on the north side. I was just about *in the center* of the north car track when the lights were thrown in my face." Again, speaking of the written statement made at the hospital, he said: "I told him (the man who took the statement) that I was very sure I was *very near two-thirds of the way across* the street at the time of the accident."

It will thus be seen that from the plaintiff's own testimony the jury would be left entirely to speculation as to what point in the street the plaintiff had reached as he was going from south to north across Grand Avenue at the time he observed the lights from the defendant's car.

Defendant testified that he was traveling east on Grand Avenue, and that his car was astraddle of the south rail of the south street car track, and as he approached the Thirteenth Street intersection he slowed down to 15 or 20 miles an hour. He saw the defendant when he was about 50 feet from him as he was crossing Grand Avenue. He honked the horn and thought he could drive in front of the plaintiff, but plaintiff proceeded on. Then defendant pulled his car to the right to go behind him, and at that instant defendant turned and stepped back to the south, directly in the pathway of the defendant's car, and was struck by the left fender or bumper.

Touching the proposition as to the plaintiff stepping back or

jumping back, the plaintiff says he was confused by the lights from the defendant's car. In the written statement that he made at the hospital he said that he might have told them that he jumped. At the trial he said:

"I might possibly have stepped back. I wouldn't say that I didn't step forward. The car struck my right leg on the right side of my right leg.

"Q. Well, now, had you turned around, turned south when that car struck? A. Well, sir, I couldn't say whether I turned or not.

"Q. You were going north— A. The best that I can remember I stood perfectly still to give the man a chance to go past me.

"Q. But you were going north and as you were traveling north that, of course, would put your right leg to the east. A. Yes, sir. * * * I would not say that I did and I would not say that I didn't step back. I don't remember about turning around and turning south. I might have turned away from the lights. I was confused at that time and blinded and I would not say that I did or did not because I don't remember. I might have told the man who took the statement that. *I would not say that I didn't.*

"Q. But you do think that you must have turned around, turned back some way? A. Yes, sir

"Q. And just about that time the car struck you? A. Yes, sir."

There were two eyewitnesses to the accident. Russell Vonk, one of the young men who witnessed the accident, said:

"We were going west on East Grand Avenue and approaching the intersection of East Thirteenth Street from the east. As we got near East Thirteenth Street I saw a car approaching from the west, which I afterwards learned was a Plymouth and was being driven by Raymond Strater. The Plymouth car was driven about astraddle of the south street car rail. I also saw a man walking north across Grand Avenue on the east side of Thirteenth Street and when this man was close to the south car track and still walking north, I heard the horn sound upon the Plymouth automobile. The Plymouth was about fifty feet west of this man at that time. As the car came closer to the man and

*when he was on the south car tracks* he seemed to see the approaching automobile and jumped backward right into the path of the Plymouth. The driver of the Plymouth swerved his car to the south and did not get far enough to avoid striking the man.'' John Wright, the other occupant of this car testified: ''As we approached East Thirteenth Street I saw a man whom I afterwards learned was Mr. Kortright, going north across Grand Avenue along the east side of Thirteenth Street. I saw the defendant's Plymouth coach approaching from the west. Mr. Kortright apparently became confused and *stepped back to the south right in front of the Plymouth coach* so that the left front fender of the Plymouth struck him and knocked him to the pavement. The driver of the Plymouth swerved to the south but not far enough to miss striking Mr. Kortright. The lights on the Plymouth were lighted. Vonk and I helped Mr. Kortright to the curbing. One of his legs seemed to be hurt. The only thing I heard Mr. Kortright say was that *he tried to dodge the car.*''

Counsel for appellant in argument state that appellee in his amended abstract did not set out the cross-examination of the witnesses, Vonk and Wright, and argue that there is a presumption that the cross-examination would be against the interest of the appellee. The trouble about this is that the amended abstract purports to set out the entire testimony of these witnesses. This amended abstract was filed July 10, 1936. Appellant had ample time to either file an amendment, setting out any other testimony he saw fit, or follow the statutory method of certifying the record or transcript. The significant thing about the whole matter is that appellant left the entire testimony of these witnesses out of his abstract of the record.

The evidence shows that after the plaintiff left the curb line and started north he never again looked to the west. Defendant saw him, honked his horn, thinking the plaintiff would stop and let him pass in front of him. When he saw plaintiff continuing he swerved out to go behind him and about the same instant plaintiff was attracted by the lights on the defendant's car, says he stopped, looked to the west. The lights blinded him and confused him, but he admits that he might have stepped back. The fact that he was struck on the right leg demonstrates that he must have turned to go back. He told Wright, who helped pick

him up, that he was trying to dodge the car. It is plainly evident that this unfortunate man did the worst thing he could possibly have done under the circumstances, attempt to dodge an approaching car. Under such circumstances the driver is at a great disadvantage. There was nothing he could have done, under this record, to avoid this accident, except to have stopped his car almost instantly. There could be no other conclusion from this record but that the plaintiff's contributory negligence in jumping or turning and stepping backwards or toward the south was the proximate cause of this injury. Had he proceeded on north the accident would not have occurred. Had he stopped and stood still the accident would not have occurred. His jumping backward or turning backward, an act beyond the control of anyone, placed him in a position where it was impossible to avoid striking him.

The rule is well known that if the negligence of the plaintiff contributes in any degree or in any manner in bringing about the injury complained of, he cannot recover. Before plaintiff was entitled to recover, he was bound to make a prima facie showing that he was not guilty of contributory negligence. Stawsky v. Wheaton, 220 Iowa 981, 263 N. W. 313. Ordinarily, this is a question for the jury, but under this record, there is practically no dispute on this point—that the plaintiff jumped or stepped in front of the moving car. So say all the witnesses for defendant, and the plaintiff's own words and the fact that his right leg was struck point conclusively to the truth of the defendant's testimony. Minds of reasonable men could not differ, and had the case been submitted to the jury, and a verdict returned in favor of the plaintiff, the trial court would have been duty bound under this record to set aside the verdict. Under such circumstances, it was his duty to direct a verdict in favor of the defendant. Schmidt v. Hayden, 205 Iowa 1369, 219 N. W. 399. Last clear chance was not raised or argued.

The case is affirmed.—Affirmed.

PARSONS, C. J., and ANDERSON, DONEGAN, KINTZINGER, RICHARDS, ALBERT, MITCHELL, and STIGER, JJ., concur.