JOHN F. HICKS, Appellant, v. HARRY E. BURCH et al., Appellees.

No. 45903.

FEBRUARY 17, 1942.

Gillespie & Gillespie and Daniel J. Gallery, for appellant.

Putnam, Putnam, Fillmore & Putnam and Phil R. Wilkinson, for appellees.

HALE, J.—Part of the facts in this case were by stipulation. The place where the accident occurred was outside the city limits and near the airfield south of the city of Des Moines. A paved street known as Southwest 21st Street runs south to the airfield, and is intersected by a graveled street known as McKinley Avenue, the surface of which is a little wider than the paved Southwest 21st Street, the slab of which street is 18 feet wide. The accident occurred on December 24, 1938. The plaintiff was struck by a car driven by Harry Burch and belonging to his wife, and sustained injuries for which he asks damages.

The plaintiff and two men—Harbach and Dings—were employed at the airfield. Certain parts of the statement of facts made by plaintiff are admitted by defendants to be correct, and are as follows: "On December 24, 1938, Plaintiff was a timekeeper on the W. P. A. project at the Airport near the City of Des Moines, Iowa. About 3:30 P. M. on that day he had ridden to the intersection of Southwest 21st Street and McKinley Avenue, at the northeast corner of the Airport grounds, which was outside the City limits, being in a car driven by one Dings, in which one Harbach was also a passenger. At said intersection the plaintiff decided he would go back to the Shelter House on the Airport grounds, and Dings pulled in on McKinley Avenue heading west, or somewhat northwest, on the south side thereof, so as to stop one Hess, a clerk on the same project, who was coming from the west on McKinley Avenue in a car, so that Hicks could ride back with Hess. Hess pulled across the paved Southwest 21st Street and stopped on the south side of McKinley Avenue, east of the pavement. * * * Plaintiff got out of the Dings car and started east across the pavement toward the Hess car. Dings and Harbach saw him as he walked."

Samuel E. Dings, whose car, as we have noted, was parked on the south side of McKinley avenue headed in a northwesterly direction, saw Hicks get out of the car and start to go across to the Hess car on the east side of the paved street. Hicks, as he got out, turned to the south to close the door of Dings' car, and started across the street. When he had got approximately to the center of the paving a car was coming rapidly from the south and he stepped back; witnesses vary as to how far, one

stating that he stepped back to the middle of the west side of the paving. After the car from the south had passed he went on and reached the middle or the east side of the street. Burch was coming from the north on the right, or west side of the road, but as he came close to plaintiff—who had continued walking onto the east side of the pavement—he veered to the left for the purpose of avoiding a collision, and plaintiff was struck by the fender of the Burch car. Plaintiff at the time was walking on about what would be the fence line if the fences on the south side of McKinley Avenue had extended across Southwest 21st Street. Plaintiff was severely injured and was taken to a hospital.

Only four witnesses, including plaintiff, testified as to the facts of the accident. We think there can be no question that the plaintiff had stepped into the street and that he did step back. Naturally, the witnesses differ somewhat as to distances. Dings, plaintiff's witness, states that the defendants' car "caught Mr. Hicks nearly on the east side of the highway." The day was clear, the paving was dry, and the view was unobstructed from the intersection north to the crest of an elevation on Southwest 21st Street about a quarter of a mile from McKinley Avenue, and it was as it was coming over this crest, or top, of the hill that the witnesses first saw the Burch car. No witness testifies that after the plaintiff was in the street he looked to the north. Dings testifies that before plaintiff entered the pavement from McKinley Avenue he "made a glance" to the left and the right as he reached the pavement, that is, he apparently looked to the right; but the witness explains this testimony further by saying: "He was ahead of me aways and * * *. Naturally I couldn't look at his eyes. I wasn't where I could see where his eyes were going—the movement of his head would naturally give any one the impression that is what he was doing—I was so far behind him I couldn't even tell which way, straight east, or otherwise, except from the moving of the head." The witness further testifies that Hicks had taken one or two steps back from the center of the road to let the car from the south pass, and that he then took one or two normal steps over to the east side of the paving on Southwest 21st Street. Hess, who was driving toward the east, had crossed the paved street and had

parked his car on McKinley Avenue east of the paved street, and was waiting for Hicks to join him. He was parked about the middle of McKinley Avenue, with his car facing northeast. His only view of the intersection was through his rear-view mirror. This witness saw the car approaching from the south, and first saw the Burch car approaching from the north when it was about 300 feet away, but he did not observe it after it reached a point about 25 feet north of the intersection, where it passed from his sight, and he therefore did not see the actual collision. He did not observe the actions of plaintiff in crossing the street, since he had ceased to observe him when plaintiff got out of Dings' car.

Harbach, another witness for plaintiff, was one of the occupants of the Dings car when it stopped to permit the plaintiff to go back to the airfield. He states that plaintiff got out to the center of the pavement, at just a normal walk, and was in the middle of the pavement when the car came from the south, and Hicks stopped, and after this northbound car went past he started east across the pavement. Harbach saw the approaching Burch car and called to plaintiff. He claims that plaintiff was about three feet east of the center when he was struck. He does not testify that at any time he observed the plaintiff looking to the north. He did not see Hicks do anything before he stepped onto the pavement.

The plaintiff himself was a witness and testifies to crossing the road after he left the Dings car; that when he closed the car door he was looking south and would have to be looking south to close the door; that he got to the middle line of the street and there was a car coming from the south; that he let that car go by and then stepped over the line, or stopped going forward and started toward the Hess car, which would be a little to the north of him, and that was all that he could remember. He does not testify that he at any time looked to the north, and he does testify that he did not look after he entered the slab the first time.

We have given fully a statement of the testimony in relation to the accident and injury sustained by the plaintiff. At the conclusion of plaintiff's testimony defendants submitted to the court a motion for a directed verdict. Among the various

grounds of the motion were failure to make a showing of freedom from contributory negligence, and that plaintiff was shown to be guilty of contributory negligence as a matter of law. This motion was sustained by the court and verdict directed and returned. The court stated in its opinion that plaintiff was clearly guilty of contributory negligence. From this ruling of the court the plaintiff perfected his appeal, and argues that, under the evidence introduced, there was presented a question for the determination of the jury.

Plaintiff cites a number of cases, and relies upon Orth v. Gregg, 217 Iowa 516, 250 N. W. 113, and Scott v. McKelvey, 228 Iowa 264, 290 N. W. 729. Neither of these cases supports his contention. In the Orth case the plaintiff stated that he looked and saw the car. The case of Scott v. McKelvey involved an accident which occurred within the city limits and upon an unmarked crosswalk at an intersection. The facts are in no way similar.

Cases cited by defendants we think all support the conclusion of the court. Zuck v. Larson, 222 Iowa 842, 845, 270 N. W. 384, 386, is a case in which the court affirmed a directed verdict under facts very similar to those in the instant case. The court there says: "He walked out into the center of the pavement without making any observations toward the west from which direction defendant's car had been approaching, fully observable by decedent during the period it was traveling the one-half mile. When he attempted to cross the car was almost upon him. The decedent failed to exercise ordinary care. Negligence characterized his acts. Clearly such negligence contributed to his injury." Citing cases. Nyswander v. Gonser, 218 Iowa 136, 253 N. W. 829, was a case in which the court sustained a motion for a directed verdict under facts very similar to the facts in this case.

Other cases cited by defendants—Ward v. Zerzanek, 227 Iowa 918, 289 N. W. 443; Kortright v. Strater, 222 Iowa 603, 269 N. W. 745; Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393; Sheridan v. Limbrecht, 205 Iowa 573, 218 N. W. 278; Whitman v. Pilmer, 214 Iowa 461, 239 N. W. 686; Norris v. Lough, 217 Iowa 362, 251 N. W. 646; Fortman v. McBride, 220 Iowa 1003,

263 N. W. 345; Armbruster v. Gray, 225 Iowa 1226, 282 N. W. 342—all tend to support defendants' contention. We think an examination of these cases clearly demonstrates that the court was right in directing a verdict under the facts of this case. The court, in sustaining the motion, said:

"I think Mr. Hicks was clearly guilty of contributory negligence in this case. He don't even undertake to tell you, or tell us, that he thought he could get across. He didn't see the car. Doesn't remember of looking. Mr. Dings, his own witness, says that he didn't look after he entered upon the slab the first time."

We are satisfied that the ruling of the court was right, and that the motion for a directed verdict was properly sustained.—Affirmed.

MITCHELL, SAGER, MILLER, and WENNERSTRUM, JJ., concur.

GARFIELD, J., and BLISS, C. J., and OLIVER, J., dissent.

GARFIELD, J. (dissenting)—I respectfully dissent.

The witness Dings testified: "* * * as he [appellant] started across the paving a car came from the south and he stepped back. However, I would say he glanced both ways before he started. * * * At the time he started I myself saw no cars coming from the north at all. However, about the time the car from the south went by two cars came over the knoll about a quarter of a mile, from the north."

On cross-examination, Dings said: "He hesitated momentarily before he stepped onto the pavement. He apparently looked both ways on the highway. His head kind of turned as if he was. Naturally I couldn't look at his eyes. I wasn't where I could see where his eyes were going. The movement of his head would naturally give anyone the impression that is what he was doing."

Appellant himself testified that the last he remembered was when he saw the car coming from the south. The next he remembered was waking up in the hospital the following day. The record does not support the majority's statement that appellant testified "he did not look after he entered the

slab the first time." What appellant did say is "I don't recollect seeing the Burch car. I don't recollect looking to the north." Appellant's loss of memory is readily accounted for by his serious injuries from which he was confined for several months. Appellant did testify, however, that he walked straight east across the pavement at the intersection and at an ordinary gait of 3½ to 4 miles an hour. Appellee offered no evidence.

Viewing the above record in the light most favorable to appellant, I think the issue of contributory negligence was for the jury. Appellant started directly across the street at an intersection when no car from the north was in sight. He did not cross diagonally nor between intersections. The jury could find that he looked to the north, as well as to the south, as he stepped onto the paving and could then see no car for a quarter of a mile to the north. There was no apparent danger from that direction. The record is silent as to whether appellant again looked to the north. However, he was not, under the circumstances, guilty of contributory negligence as a matter of law if he failed again to look or to see appellee's car which was traveling on the left side of the paving. He was not required to keep a constant lookout. The following, among other authorities, support this dissent: Swan v. Dailey-Luce Auto Co., 225 Iowa 89, 281 N. W. 504; Huffman v. King, 222 Iowa 150, 268 N. W. 144; Robertson v. Carlgren, 211 Iowa 963, 234 N. W. 824; Read v. Reppert, 194 Iowa 620, 190 N. W. 32; Wine v. Jones, 183 Iowa 1166, 1170, 162 N. W. 196, 168 N. W. 318.

In 5 Am. Jur. 886, 887, section 705, it is said:

"There is no imperative rule of law requiring a pedestrian under all circumstances to look for approaching automobiles before crossing a street or highway; * * * whether a pedestrian should have looked again, or continued to look, for automobiles while crossing a street or highway, depends on the circumstances and is a question for the jury."

I would reverse.

BLISS, C. J., and OLIVER, J., concur in this dissent.