Victor Norris, Administrator, Appellant, v. Earl Lough, Appellee.

No. 42029.

December 12, 1933.

Welch & Virtue and Robertson & Wolfe, for appellant.

Tinley, Mitchell, Ross & Mitchell, for appellee.

Evans, J.—The grounds of the motion included that of contributory negligence on the part of the deceased, and of the absence of negligence on the part of the defendant. In view of our conclusion on the question of contributory negligence, we shall have no occasion to consider other questions.

The personnel involved in the evidence, other than the decedent himself, are W. H. Johnson, Victor Johnson, Emmet Moulton, George Welden, and Peter Brummer. The accident happened upon a so-called "dirt road" in the village of Magnolia. The time of the accident was February 6, at 10:30 a. m. The road in question extended east and west through the village. The place of accident was at a point about three blocks west of the business part of the village. W. H. Johnson came to the place of the accident by appointment with George Welden, for the purposes of a business transaction. The two Johnsons and Moulton came together in

a car from the east and parked on the north side of the street. Welden and Brummer came together in a car from the west and parked their car on the south side of the street, leaving a space of 10 or 12 feet between the cars. Norris, the decedent, came to the place afoot. He was walking east along the south side of the road and stopped to converse with the persons there gathered. The defendant, Lough, was the operator of the truck. He came from the east with a load of 150 bushels of shelled corn. The place of the accident was a short space of fifty or a hundred feet between two hills,—one to the east and the other to the west. To the top of the hill on the east was a distance of about 300 feet. To the top of the hill on the west was a distance of about 200 feet. There was a well-marked traveled track on the road and the defendant was occupying this track as he approached the Welden car. The Welden car was parked just south of this track but close to it. There had been a recent snowfall. The weather was warm and a thawing process was going on. The hill to the east and the upper slope thereof was dry. The lower slope of the hill, and the level ground between that and Welden's automobile, was very slippery as a result of the thawing and caused more or less skidding of the truck with its load. W. H. Johnson had crossed the street to the Welden car and was there engaged in conversation with Welden at the time that Norris approached and at the time that defendant's truck appeared over the hill to the east. As the truck approached the Welden car on the traveled track, Johnson took a position on Welden's running board and Norris crowded up to Johnson as closely as he could. The front end of the truck cleared the Welden car, but the rear end brushed the car and caught both Johnson and Norris in its sweep. The evidence tends to show that Lough believed he could pass the Welden car safely by drawing away to the right. Johnson and Norris appeared to have believed to the same effect. But because of the slippery condition of the street, Lough was unable to hold his truck from contact with the Welden car.

The foregoing outline is sufficient to enable an understanding of the evidence hereinafter quoted. The following quotations from the testimony of the plaintiff's witnesses will indicate the general situation of the parties at the time of the accident, better than we can summarize it:

Plaintiff's witness W. H. Johnson, after stating that he saw the approach of Lough's truck, testified as follows:

"He was approximately 300 feet from me when I noticed it. The truck was traveling approximately 20 miles an hour. When I noticed this truck coming from the east I stepped upon the running board of Welden's car and Harry Norris was right at my side at that time. That would be to my right as I faced south. The truck was 150 feet from me when I stepped on the running board at the time. When the truck was 300 feet away from me it was on the south side of the road and it was on the south side of the road when it was 150 feet from me. As the truck approached the last half of the distance the wheels of the truck were not pointing directly in the track but were pointing northwest. I think the truck slowed down a little as it approached us. Mr. Lough endeavored to turn his truck out so that the car was at an angle and the truck struck me standing on the side of the coupe as it was about half past me. Just before the sounding of the horn on the truck my son moved my automobile which was parked at the north side of the highway about 75 or 100 feet to the west. After the truck struck me Mr. Norris was lying ten or twelve feet behind me."

### Cross-examination.

"For a distance of about 150 feet the front wheels of the truck were sliding not in a rut, but the road was slippery as it was thawing very much at that time. There were no obstructions to prevent me from stepping over to the north side of the road and there was nothing on the south side of the road except the automobile that was parked there to prevent me from going to the south side of the road. I observed the truck for approximately 150 feet. It was going sideways and appeared to be skidding.

"Q. You and Mr. Norris and the people there were watching the truck? A. Yes, sir.

"Q. And Mr. Norris was watching it? A. I think he would be.

"Q. That is your judgment about it? A. Yes, sir.

"Q. And you observed there, at least for a distance of 150 feet, that its wheels were sliding in a rut there—the front wheels? A. Yes, sir.

"Q. And Mr. Norris was standing there with you in that track? A. Yes, sir.

"Q. Looking towards the truck? A. Yes, sir."

Plaintiff's witness Peter Brummer testified:

"Welden and I did not get out of the Welden automobile. We rolled the glass down and talked to Mr. Johnson. We talked a few minutes when Mr. Norris came up to the road. I did not see him until he got opposite our automobile and he spoke to Mr. Johnson. At that time I saw the truck driven by Earl Lough coming towards us. It was an International truck with a grain box on it. It was on the top of the hill when I first saw it. I watched it coming down the hill and saw it coming towards us. I saw that the wheels were cramped to the right when it was about 100 feet from us. It was on the south side of the road. *The surface was awfully slippery.* It was thawing and the road was greasy that morning. The front wheels of the truck looked like they were locked and they were skidding. Mr. Johnson stepped up on the running board and Mr. Norris leaned over the back part of the fender stooped over like. When the truck came up the top part of the box rubbed over the fender and swept them off. I looked over the back part and Mr. Johnson was thrown over Mr. Norris about 25 feet and Mr. Norris was thrown 10 feet, and the truck dragged him back."

Cross-examination.

"The track on the top of the hill was in the center, but as it came down it was more to the south. The road was dry at the top but the slippery condition increased as it went down hill. I heard a horn sounded on the truck and I saw the truck when it started to come down the hill about 300 feet. I had no difficulty in seeing the truck and in seeing the wheels were locked. *Mr. Norris did not move from the position in which he was standing. He just leaned over the car.* Before the collision, in my best judgment, Mr. Lough was going about 10 or 15 miles an hour and he was slowing down as he went down the hill. His front wheels were locked and he was slipping toward us. There was about 150 bushels of shelled corn in the truck."

Plaintiff's witness George Welden testified:

"I saw the truck just as it came over the hill and it was at that time Mr. Johnson moved his automobile down the road a little ways. It was about 300 feet from the top of the hill down there. I heard Mr. Lough sound his horn only once. It looked like he was trying to turn out; his wheels were turned towards the right, or north. He appeared to be trying to get out of the track. *Mr. Norris*

*was standing right about in the track. I didn't see Mr. Norris move.*
He could have gotten behind the car and stepped to the south, or
he could have stepped to the north, there was room there if he
had done it.

"Q. Now, I want to ask you a question, what would you say
from the time the truck came over the top of the hill there, was there
time for a man to walk out of that track? A. Well, yes, he could
have gotten out of there.

"Q. He could have gotten behind the car and stepped to the
south? A. Yes, sir.

"Q. He could have stepped to the north? A. Yes, sir.

"Q. There was room there? A. Yes, sir.

"Q. And, in your judgment, time to have done that? A. Yes,
he had time if he had just done it."

Plaintiff's witness Victor Johnson testified:

"I saw the truck as it was at the top of the hill. It was Earl
Lough's International truck, and there was a grain box on it loaded
with shelled corn.

"Q. How close was the Lough truck to the Welden car before
the front wheels appeared to he moving out of the track it was
following? A. One hundred and fifty feet.

"The truck traveled at a slight angle and hit the Welden car
at that angle. The front wheels of the truck cleared the front end
of the Welden car. The horn on the truck was blown after the
truck appeared on the crest of the hill. As the truck got closer
to the Welden car my father stepped upon the running board. Mr.
Norris stepped a little closer to the rear fender of the Welden car.
Immediately after the truck passed my father was lying 25 or 30
feet west of the Welden car and a little to the south and Mr. Norris
was lying 15 feet behind the Welden car."

Cross-examination.

"*I observed Mr. Norris standing there watching the truck as it
came down the hill and until the accident happened.* I heard the
truck coming and I heard the horn honk. I saw the cramping of
the wheels when it came down and when about 150 feet from the

Welden car. The wheels were sliding from a distance of about 150 feet before this accident occurred. *Mr. Norris was standing and looking at the truck as it was sliding towards him.*

"Q. So at the time Mr. Norris was standing in the road your father was on the running board. Isn't that true? A. That is true.

"Q. And he was still standing in the road? A. He was still in the road.

"Q. And he kept watching it as it came down there? A. It looked that way to me.

"Q. And as you testified, you thought it was funny he didn't get away. It looked odd to you, didn't it? A. Yes, sir.

"Q. And you observed that as the truck came down there it was sliding? A. Started sliding about 150 feet.

"Q. And when you heard the noise you moved out to the north side of the road and up the road? A. Yes, sir.

"Q. And you noticed during this entire period that the wheels were turned to the north in the track and apparently they were not moving? 'A. Within the 150 feet.

"Q. Yes, that is the 150 feet they were not turning. A. No, sir.

"Q. *And at that time you saw Mr. Norris standing in the road watching the truck?* A. Yes, sir.

"Q. Didn't you? A. Yes, sir.

"Q. There is no question about that, is there? A. No, sir.

"Q. Not a bit? A. No, sir."

That the foregoing evidence discloses contributory negligence, indisputably, is quite beyond debate. Whether the defendant, Lough, was also guilty of negligence would be a more difficult question. We have no occasion to pass upon it.

On the ground here indicated, the order of the trial court was proper. It is accordingly affirmed.

ALBERT, C. J., and KINDIG, CLAUSSEN, and DONEGAN, JJ., concur.