W. T. Cumming, Appellant, v. M. O. Dosland, Appellee.

No. 44955.

November 21, 1939.

Rehearing Denied March 9, 1940.

McCoy & Beecher and V. S. White, for appellant.

Geiser & Donohue and Burr C. Towne, for appellee.

Hale, J.—State highway No. 63 is a paved highway, 18 feet wide, running from Waterloo north, and is the main traveled highway between Waterloo and New Hampton. On the morning of February 24, 1937, about 8:30 or 9 o'clock, the plaintiff, with three other men, all of whom were employed by the highway commission, went north about a mile from Waterloo on said highway No. 63 to look after some flumes. Their truck was stopped on the shoulder on the east side of the pavement, just north of the flume leading east from the pavement

to the ditch. There was also a flume on the west side of the pavement. The distance between the truck and the east side of the pavement was about 2 feet. At the time the weather was cold and the pavement was very icy and slippery. There was not a great deal of traffic on the highway at that particular time. South on the highway the road goes up an incline, and at the east side of the road there is a filling station about halfway up the slope. After the truck was stopped the plaintiff and the other men got out of the truck and began to clean out the flumes. The plaintiff, with one of the other workers, walked across the pavement and started to clean the flume on the west side, using an iron bar about 4 feet long. Plaintiff then walked east across the pavement, threw the bar into the truck, and took a shovel out of the truck to use in shoveling snow. The plaintiff states that before starting to walk back to the truck from the west shoulder he looked for traffic, and saw only the defendant's car, which he stated was about 80 rods south of the place where the accident occurred. The defendant, in a Chevrolet coupe, was driving north on the right or east side of the road.

A witness, Semenfelder, who at the time was in charge of the filling station, had crossed the pavement and was on its west side, about 35 rods south of the place where the truck was parked. At the time the plaintiff started to walk east across the highway from the flume at the west side this witness states that the defendant's car was about 40 rods south of where the witness was standing. When the plaintiff reached into the truck and took out the shovel he was about 3 feet east of the pavement. He started to go back to the west side of the pavement, walking from the rear of the truck west to the east edge of the pavement, about 3 feet, carrying the shovel in his right hand. He stepped on the pavement with his left foot and set the bottom of the shovel on the pavement, his foot and the shovel being about 2 feet west of the east edge of the pavement, with his right foot on the shoulder at the edge, and while standing in this place and in this position he was struck by the defendant's car. He states that as he stepped onto the pavement he looked south and saw the defendant's car about 200 feet south, swerving from side to side. There was testimony to the effect that when the car passed Semenfelder it was going at the rate of about 50 miles per hour, but that after passing the witness about 10 rods, and before it reached the place where the plain-

tiff was standing, it slowed down to 25 or 30 miles per hour and started to swerve.

The only witness to the occurrence besides the plaintiff was Semenfelder, and his view was obscured by the coupe shortly after it had passed him and before it struck the plaintiff. The plaintiff's own testimony as to what occurred after he stepped back onto the pavement and while he had his foot and the shovel on the roadway is that at that time he saw the automobile approaching, as he states, "too close," and that the car was "weaving all over the road." He states that he stopped and at that time the car was about 200 feet south.

"Q. And you stood and watched the car weaving back and forth on that road, is that right? Did you continue to watch the car when you saw it 200 feet away? A. I didn't watch it long.

"Q. You saw it weaving there as far as you saw it? A. Yes, sir, it was weaving the last time I saw it.

"Q. But you at no time stepped back off the paving did you? A. No, I didn't.

"Q. But you at no time stepped back onto the shoulder before the car got up to where you were? A. No, I couldn't.

"Q. You mean to tell the jury you couldn't take one step back while that car was coming 200 feet? A. Well, I didn't.

"Q. You just stood there? A. I was there when he come, when he hit me.

"Q. And you were on the same spot when that car came 200 feet from the time you first saw it? A. That's as near as I could tell you."

The only other evidence introduced by the plaintiff besides the testimony of the two mentioned were witnesses who testified as to the extent of the injuries. At the conclusion of plaintiff's testimony the defendant moved for a directed verdict on the grounds, first, that the plaintiff had failed to show that the defendant was negligent, or that the negligence, if any, of the defendant, was the direct and proximate cause of the accident and injury; and, second, for the reason that the plaintiff had failed to show that he was free from contributory negligence. This motion was sustained by the court, and from this

sustaining of the motion and the judgment entered the plaintiff appeals.

The plaintiff's allegations of negligence in his petition were: failure to reduce speed to a reasonable and proper rate; driving the automobile at a rate of speed greater than was reasonable and proper; failure to turn the automobile to the left so as to avoid striking the plaintiff; and failure of the defendant to have his car under control. The grounds of the motion included contributory negligence on the plaintiff's part and the absence of negligence of the defendant. We find it unnecessary to discuss at any length the question of negligence, as our view of the facts and our conclusion as to the question of contributory negligence determine the question of the defendant's liability.

The plaintiff insists that the court erred in sustaining defendant's motion on the question of contributory negligence, for the reason that there was sufficient evidence in the record to make the question one for the jury. We think it is manifest from the testimony, the substance of which we have given, that the plaintiff, seeing the car approaching 200 feet away, knowing of the icy condition of the pavement at the time and that the driver of the car was having trouble, apparently on account of the slippery road, remained on the pavement and on the side which ordinarily a car from the south would have to traverse. We do not think that reasonable minds would differ as to the fact that he had ample time from the time he observed the car and had stepped out onto the pavement to withdraw out of that portion of the highway which he knew was traveled by cars from the south. It lay within the power of the plaintiff either to remain as he was, in a position of danger, or to retreat by merely stepping back to a place of safety.

The plaintiff insists, and the courts have held, that a pedestrian and an automobile have equal rights upon the highway. But this right did not authorize the plaintiff to stand watching the car approaching, knowing the condition of the roads and the difficulty in driving, when it was apparent, or to an ordinarily reasonable man it would have been apparent, that if he remained in that position he was running a serious risk.

As said by Justice Evans, in Sheridan v. Limbrecht, 205 Iowa 573, 576, 218 N. W. 278, 279:

"It is argued for him that he had a right to cross the street at any place, and this is legally so. But this does not absolve him from the duty of ordinary care. In so doing he knew that he was incurring danger. The vigilance required by ordinary care is proportionate to the known danger present. In making this crossing at an unusual place, he knew that he was likely to encounter passing automobiles, and ordinary care required of him that he should be on the lookout against collision with them. As between a pedestrian and an automobile on the street, the pedestrian has the better opportunity to avoid collision. If an automobile is about to pass in front of him, he can readily stop. But if he attempts to pass in front of an automobile, the problem is more difficult."

It is also true, as claimed by plaintiff in argument, that the question of contributory negligence is generally one for the jury; but in this case, to have submitted this question to the jury would have been error. Under the undisputed facts, if the plaintiff had exercised ordinary care the accident would not have happened. The plaintiff knew, or must have known, that with the car approaching at the time when he was 2 feet on the pavement he was not in a zone of safety. There is no reason shown why he did not step back, and with the car at the distance he states, there was ample time to have made such a movement. As he himself testifies, with the car coming from the south 200 feet away he did not step back, but just stayed there. We do not see how the plaintiff can excuse his failure to act at that time. Under the evidence the question of contributory negligence could not properly have been submitted to a jury. See Norris v. Lough, 217 Iowa 362, 251 N. W. 646.

There is no occasion to review at length the various authorities cited. The question was one of fact under the evidence and was rightly determined by the court. The following cases cited by defendant, with others cited therein, we think support our view. Zuck v. Larson, 222 Iowa 842, 270 N. W. 384; Nelson v. Mitten, 218 Iowa 914, 255 N. W. 662; Sheridan v. Limbrecht, supra; Pettijohn v. Weede, 209 Iowa 902, 227 N. W. 824; Whitman v. Pilmer, 214 Iowa 461, 239 N. W. 686; Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393; Stawsky v. Wheaton, 220 Iowa 981, 263 N. W. 313; Lindloff v. Duecker, 217 Iowa 326, 251 N. W. 698; Armbruster v. Gray, 225 Iowa 1226, 282 N.W. 342;

Albrecht v. Berry, 202 Iowa 250, 208 N. W. 205; Nyswander v. Gonser, 218 Iowa 136, 253 N. W. 829.

The cause of action herein arose prior to the passage of chapter 134 of the Laws of the Forty-seventh General Assembly, and the discussion and authorities listed apply to the law as it then stood.

Our holding on the issues presented is that the court was not in error in its ruling, and the case is, therefore, affirmed.—Affirmed.

OLIVER, C. J., and HAMILTON, STIGER, SAGER, BLISS, and MILLER, JJ., concur.