Argued October 30, 1962, reversed and remanded February 14, 1963

# LOVINS *v.* JACKSON ET AL

378 P. 2d 727

*William D. Cramer,* Burns, argued the cause for appellant. On the briefs were Cramer & Gronso.

*Roland F. Banks, Jr.,* Portland, and *James F. Bodie,* Prineville, argued the cause for respondents. With them on the brief was Pat H. Donegan, Burns.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, LUSK and DENECKE, Justices.

DENECKE, J.

Plaintiff, while working on a State Highway Department truck, was injured when the truck was hit by a vehicle driven by one of the defendants. The jury returned a verdict for the defendants. All the assignments of error are directed to instructions given or requested instructions not given.

Plaintiff worked for the State Highway Commission. On a cold and foggy Eastern Oregon morning, he and another state employee, Denstedt, were sent out from Burns to plow snow and sand U. S. Highway No. 20. They had a dump truck with a snowplow attached in front. On the rear was a sanding machine. The sand was in the bed of the truck.

They plowed the edge of the road to the top of Sagehen Hill. There they turned around and pulled over to the righthand side of the road, facing east. The right side of the truck was against the snow, which was piled up by continual plowing. The surface of the road was slick, packed snow. Denstedt, who

had been driving, got out and started the sanding motor on the rear. Plaintiff got out of the cab, climbed onto the frozen sand and started to loosen it. The sanding motor was balky and the truck remained stationary on top of the hill from three to five minutes before the collision.

The defendant David Jackson was driving eastward with a truckload of lumber. He testified he saw plaintiff standing on the load, hit the brakes, turned left and skidded into the left corner of the sanding truck. Plaintiff was knocked off the truck, or, as one witness testified, the truck was knocked out from under plaintiff. There was a dispute in the testimony as to whether the state truck's lights, including the warning blinker, were on.

Plaintiff's first assignment of error, and the most crucial, was directed to the court's giving the following instruction:

"I further instruct you that it is the law of this State that when men are working on the highways of this State, that they are required to use signs stating, 'Men Working'. These 'Men Working' signs shall be placed approximately 350 feet on each side of the section where the men are at work. The signs shall be mounted on substantial, portable supports not easily knocked over or blown down; and placed in the center of the roadway unless the width of the pavement or shoulders or other conditions make this inadvisable, in which case they shall be placed adjacent to the pavement on the shoulder of the roadway. They shall be in place only so long as there are men working on or adjacent to the roadway and there is any piece of equipment on the roadway, but shall not be left during the lunch period or at night or on holidays if the road is free from hazard at that time. An

18 by 18 inch red flag shall be displayed above each sign.

"Therefore, I instruct you that if the Plaintiff failed to give warning to the Defendant by placing the 'Men Working' sign upon the highway at least 350 feet in advance of the location of the Plaintiff's vehicle, and also had an 18 by 18 inch red flag displayed over said sign, that the failure of the Plaintiff to have posted said signs would constitute negligence. And if you find that this negligence contributed to the Plaintiff's damages, he cannot recover in this case."

No warning signs were out so the instruction almost amounted to a directed verdict. The instruction is based on the assumption that violation of the regulation would be negligence per se. Plaintiff excepted to the instruction and argues in his brief, several grounds, any of which he claims are sufficient to make the giving of the instruction error.

The instruction was based upon a regulation of the Oregon State Highway Commission. The commission has adopted regulations requiring many different types of warning signs. These are incorporated in the Highway Department's Technical Bulletin No. 24, entitled, "Oregon Manual on Uniform Traffic Control Devices."

The particular regulation and prescribed sign on which the instruction was based is on page 118 of the Manual after a picture of the familiar "Men Working" sign, with sign specifications, and is as follows:

"The MEN WORKING sign shall be used for the protection of men working on or adjacent to the roadway or for the protection of traffic when the nature of the work itself is such as to create a hazard. When the men are engaged in construction operations, a CONSTRUCTION sign (W-700) shall

be placed at least 400 feet in advance of the MEN WORKING sign.

"MEN WORKING signs shall be placed approximately 350 feet on each side of the section where men are at work unless the workmen are protected by barricades and/or flagmen, in which case the sign may be placed at the beginning of the work area. The signs shall be mounted on substantial portable supports, not easily knocked over or blown down, and placed in the center of the roadway unless the width of pavement, poor shoulders, or other conditions make this inadvisable, in which case they shall be placed adjacent to the pavement on the shoulder of the roadway. They shall be in place only as long as there are men working on or adjacent to the roadway, or there is any piece of equipment in the roadway, etc., but shall not be left up during the lunch period or at night or on holidays if the roadway is free from hazard at that time. An 18- by 18-inch red flag should be displayed above each sign, and if used at night a red lantern or bomb torch should be placed beside it. The signs should be moved forward as any work progresses, so that there is at no time a distance of more than 1,000 feet between the sign and the workmen."

Plaintiff urges that a violation of this Highway Department regulation would not be negligence per se. Stated in another way, his contention is that this regulation does not establish a standard of care in a negligence action.

■ In the usual negligence case the standard of care is what a reasonably prudent person would do under the same or similar circumstances.

This court has repeatedly held that the safety regulations promulgated by the State Industrial Accident Commission established a standard of care for employers and a violation of such a regulation was

negligence per se. *Baldassarre v. West Oregon Lumber Co.,* 193 Or 556, 239 P2d 839. On the basis of the Oregon decisions involving safety codes the federal District Court of Oregon held that a violation of an Oregon Public Utilities Commission certificate limiting the load for a truck was negligence per se. *Oregon Transfer Co. v. Tyee Construction Company,* 188 F Supp 647 (D Or 1960).

■ Not every administrative regulation, however, fixes a standard of care. Each regulation must be examined to determine the purpose of the administrative agency and the legislature's purpose in authorizing the administrative agency to make such regulations.

It seems obvious that the legislature intended safety codes to be standards of care. The title to the Act authorizing the Industrial Accident Commission to promulgate safety codes states as follows:

"To promote the general welfare of the people of this state as affected by accident or negligence causing the injury or death of employes in the course of their employment by requiring safety in all employments and places of employment in this state and providing the means and methods of enforcing such safety; authorizing the state industrial accident commission to establish reasonable safety standards, defining the powers and duties of such commission and providing for a review of its orders and decisions; and providing for the enforcement of such orders and decisions by the commissioner of labor statistics and inspector of factories and workshops, and to provide penalties for the violation thereof, and relating to the interpretation of this act." Oregon Laws 1920, ch 48, p 84.

The act states:

"Every order of the commission * * * made and entered under the safety provisions * * *

shall be admissible as evidence in any prosecution for violation of any of such provisions and shall, in every such prosecution, be conclusively presumed to be reasonable and lawful and to fix a reasonable and proper standard and requirement of safety, * * *." ORS 654.085

The act made violations of the safety codes misdemeanors.

■ The total impact of all parts of the safety statute is that safety orders of the commission unequivocally set a standard of care. Compliance with such standards was of such importance that the legislature made a failure to comply a crime. If failure to comply is specifically made a crime, certainly failure to comply in a negligence case is conclusive evidence of negligence.[1]

The purpose of the legislature in authorizing the Highway Commission to provide a uniform system of signs was very different than its purpose in authorizing the Accident Commission to provide safety regulations. The statute authorized the Highway Commission:

"* * * to classify, designate and mark both intrastate and interstate highways lying within the boundaries of this state and to provide a uniform system of marking and signing such highways * * *. Such system * * * shall * * * conform to the system adopted in other states." ORS 483.040

The statute gave exclusive jurisdiction to do the marking and signing to the commission, except that in specific instances, municipalities were permitted to mark and sign. ORS 483.044. It was made unlawful

[1] This is somewhat the thesis advanced by Thayer in 27 Harv L Rev 317 (1914). It was criticized, however, by Lowndes, 16 Minn L Rev 361 (1932).

for private persons to place unofficial traffic signs on the highways. ORS 483.138.

■ Violation of these sign regulations by Highway Commission employees was not made a crime. Nothing in the statutes stated or inferred that these regulations set safety standards. Without any special legislative authority the Highway Commission could have issued orders directing its employees to erect certain kinds of signs under certain circumstances, including "Men Working" signs. The legislation was probably thought necessary to direct that the sign system be uniform and conform to other states; to grant jurisdiction over signs throughout the whole state to the Highway Commission rather than municipalities; and to prohibit private persons from placing unofficial signs along the highways. These sign regulations are not intended to fix standards of care. They are merely work directives to State Highway employees.

The giving of the instruction was error.

In some instances the jury is instructed that the fact that a party violates an administrative regulation is some evidence of negligence. *Schumer v. Caplin,* 241 NY 346, 150 NE 139. We recently held violation of a general custom or usage was some evidence of negligence, and not negligence per se. *Mennis v. Cheffings,* 233 Or 215, 376 P2d 672. The jury should not be so instructed in this case, however, because the regulation is not applicable under the circumstances of the accident.

Sanding a highway is a moving operation. Denstedt testified: "During our sanding operations, we sand in spots and cover a lot of territory. * * * The idea is, we sand maybe for a hundred yards and then we go for two or three miles before we sand any more."

Initially, they were going to sand the mile and a half down the hill.

The inapplicability of the regulation requiring the "Men Working" sign is shown by other Highway Department regulations. A road grader is no more mobile in operation than a sander. The regulations provide if a grader is being operated, a "Grader" sign shall be posted. (Oregon Manual, p 131.) The regulation states:

"* * * This sign [grader] should not be used if men are also working on the roadway. In that case the construction or maintenance operations shall be advance signed with CONSTRUCTION signs * * * and MEN WORKING signs. * * *.

"* * * The signs [grader] should be moved forward as the grader progresses so that there is at no time a distance of more than 1 mile between the sign and the grader."

The Manual contains an accompanying illustration showing when a grader is working no "Men Working" signs are to be posted.

A mower is also no more mobile in operation than a sander. Highway regulations provide that if a mower is being used, a "Mower" sign shall be placed which shall be used in the same manner as the "Grader" sign. (Oregon Manual, p 132.) The regulations contain no sign, "Sander" or "Sanding."

The "Men Working" sign and regulation concerning its placing are not applicable as they were not intended to apply to an operation conducted by means of a truck which is usually constantly moving and covering miles of highway in a short time. It is immaterial that at the time of the collision the state truck was not moving and had been stationary for a

time. This was a temporary condition and incidental to its principal method of operation. We do not believe that a road grader or mower operator would be required by the regulations to put out "Men Working" signs if he stopped temporarily to do something to the grader or mower. Neither are the operators of a sander.

■■ Defendants argue that even if this instruction were incorrect the plaintiff in other respects was contributorily negligent as a matter of law. Therefore, a defendants' verdict should have been directed and an error in instructions is immaterial. Defendants' contend plaintiff was contributorily negligent as he climbed and remained on the back of a truck parked on the highway when visibility was poor, no warning signs were posted and the truck could have been parked off the road. The testimony of Denstedt and plaintiff was that Denstedt, not plaintiff, was the man in charge and determined where the truck was to be parked. However, assuming plaintiff could have had the truck parked off the highway, we still conclude defendants' contention is untenable. The provision of the vehicle code prohibiting parking on the highway is not applicable to a vehicle working on the highway. ORS 483.032. There is testimony that visibility was 500 feet or more and that the blinking amber warning light on the truck was on. Plaintiff remaining on the back of the truck, working, under those circumstances was not contributorily negligent as a matter of law.

7. Defendants further contend plaintiff was contributorily negligent as a matter of law in that he failed to go to a safe place after he saw that a collision might occur. Plaintiff saw the defendants' headlights. He did not know whether defendants would get around the state truck or not, so he yelled, "Look out" or

"Jump" to Denstedt. Plaintiff testified as defendants' truck approached, he "froze"; he was scared. He said he could have jumped off but he did not know where to jump. He did not know what course the Jackson truck was going to take,—right, left, or straight ahead. The snow was piled two to two and one-half feet high on the road next to the truck. We cannot say that a man standing on a big solid dump truck watching a skidding vehicle approaching a short distance away is required to jump from what might be a haven onto the slick road or the snow, hoping that he has not jumped into, instead of out of, danger.

Defendants rely heavily upon the case of *Cumming v. Dosland*, 227 Iowa 470, 288 NW 647 (1939). There, the plaintiff highway worker was one step onto the pavement when he saw defendant's car swerving back and forth about 200 feet away. Plaintiff stayed where he was and was hit. No explanation was given why plaintiff did not move. The Iowa court held him contributorily negligent as a matter of law because he did not get off the pavement. The case can be distinguished. The Iowan was not in a position that may have been the safest, such as in a heavy truck. The opinion does not state whether or not it reasonably appeared that the vehicle would not go off the road. If the basic rationale of *Cumming v. Dosland*, supra, is not distinguishable, we do not find it persuasive. We hold that whether or not the plaintiff was contributorily negligent is a question of fact for the jury.

■ Plaintiff assigned as error the court's giving of an instruction on plaintiff's duty to keep a lookout and its failure to give a requested instruction on the subject. Plaintiff's alleged negligence in failing to keep a lookout went out of the case as the testimony

came in. He saw defendants' vehicle but took no action because he did not know whether to stay or jump right or left. No prejudicial error was committed in this regard.

■ Plaintiff also contends the court erred in regard to defendants' duty to look out. The court refused to give the following requested instruction:

> "A motorist whose view is obscured by weather conditions such as fog, must exercise care commensurate with the increased danger, and to slacken speed, as may be necessary, to [maintain] an adequate lookout of the road ahead."

The jury was instructed:

> "* * * It is also the duty of drivers of motor vehicles to, at all times, keep a proper look-out to discover others using the highway. That is, to keep such look-out as a reasonable and prudent person would ordinarily keep under the same or similar circumstances."

The court also explained "ordinary negligence" and pointed out that what care was required was dependent upon the circumstances.

We believe it is more helpful to the jury to be instructed as specifically as possible, rather than generally. However, we have repeatedly held:

> "* * * that the judge who presides over the trial is in a better position to determine in the exercise of his sound discretion whether a charge applicable to all conditions should be supplemented by an instruction specifically applicable to some suggested phase of the situation." (*Wills v. Petros et al,* 225 Or 122, 130-131, 357 P2d 394.)

No error was committed in instructing on the defendants' duty of lookout.

Plaintiff requested the court to instruct:

"If you should find that the defendant was negligent, and that his negligence was the proximate cause of the plaintiff's damages, if any, but that the negligence of a third party, not a party to this case, contributed to the accident, you are instructed that the negligence, if any, of such third party is not material to your decision in this case, and has no effect upon the liability, if any, of the defendant to the plaintiff."

■ An instruction on this subject is proper if the trial court determines that as the case developed the jury may be uncertain on the matter. Again, whether or not to cover this with a specific instruction is ordinarily within the trial court's discretion. The court did instruct more generally that if the defendants were negligent and such negligence was the proximate cause of injury to plaintiff, and plaintiff was not himself negligent in a manner which was a contributing cause of his injury, plaintiff was entitled to recover. (It is suggested that "*a* proximate cause" or "*a* cause" is correct, rather than "*the* proximate cause.")

It cannot be anticipated whether or not an instruction similar to that requested would be appropriate at a new trial.

Reversed and remanded.