Argued June 29, affirmed September 23, petition for rehearing
denied December ·16, 1964

# ASHLAND *v.* PACIFIC POWER & LIGHT

## CO. ET AL

395 P. 2d 420

397 P. 2d 538

*Arthur C. Johnson,* Eugene, argued the cause for appellant. On the briefs were Johnson, Johnson & Harrang, Eugene.

*Sidney E. Thwing,* Eugene, argued the cause for respondent Pacific Power & Light Co. On the brief were Smith, Rives & Rodgers and Gerald J. Norville, Portland.

*Richard Bryson,* Eugene, argued the cause for respondent Hugh Carter. On the brief were Calkins & Bryson, Eugene.

*John L. Luvaas,* Eugene, argued the cause for respondent Manley Suess. On the brief were Luvaas, Cobb & Richards, Eugene.

Before PERRY, Presiding Justice, and SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

PERRY, J.

This is an action brought by the plaintiff seeking damages for personal injuries claimed received in an automobile collision.

The plaintiff Dorothy Ashland was a passenger in an automobile being driven by the defendant Manley Suess which collided with an automobile being driven by a Mr. Chatfield, who is not a party to this action.

The defendant Hugh Carter was an employee of the State Highway Commission and was charged with the duty to install and maintain traffic control signs on state highways in Lane county.

The defendant Pacific Power & Light Company is a corporation engaged in the distribution of electricity in the state of Oregon.

After the issues had been tried, the trial court entered a judgment of involuntary non-suit in favor of the defendant Pacific Power & Light Company, and the jury returned verdicts in favor of the defendants Carter and Suess, upon which verdicts judgments were entered. From the judgments entered the plaintiff appeals.

The collision in which the plaintiff was injured occurred about noon August 7, 1961, at the intersection of Territorial Road and Bolton Road in Lane county. At the time of this occurrence, Territorial Road was a paved two-lane through arterial state highway, running generally north and south. Bolton Road intersects Territorial Road in a rural area about 15 miles west of the city of Eugene. Territorial Road being a through highway, traffic entering from Bolton Road was directed by stop signs to stop before proceeding into the intersection.

The defendant Suess, driving in an easterly direction on Bolton Road in his station wagon, failed to stop before proceeding into the intersection and his vehicle was struck by a vehicle driven by Mr. Chatfield, which was proceeding southerly on Territorial Road.

We will first consider the plaintiff's contention that the trial court erred in granting the defendant Pacific Power & Light Company's motion for a judgment of involuntary non-suit.

The plaintiff charged the defendant Company with being negligent "in constructing and maintaining the stubbed pole in a position that hid the view or interfered with the effectiveness of the Stop Sign" erected

by the state highway commission which directed vehicular travel in a westerly direction on Bolton Road to stop before entering Territorial Road. The power pole was braced or supported by the placing of a short or stubbed pole on its westerly side in a perpendicular position and the power pole was fastened to the stubbed pole. It should be noted that this stubbed pole was lower than the stop sign itself so that the stubbed pole did not interfere with the view of the sign by the driver of an automobile approaching the intersection from the west.

The plaintiff's evidence discloses that the power pole never completely obscured the stop sign from the view of the driver of an automobile from a distance of 313 feet east of the sign, but that it was partially obscured until the driver reached a point 163 feet from the sign where the entire sign was clearly visible.

The plaintiff's position is that the Power Company owed to the traveling public a common-law duty not to obscure in any manner a stop sign, since such action would create a trap for the unwary traveler. Assuming this to be a valid argument, the argument would, in our opinion, only have merit if the facts disclosed that the Power Company had erected the obscuring object after the stop sign had been placed in operation. The evidence in the record discloses that the pole was placed and maintained in its position long before the stop sign was erected.

By statute, the right to designate the erection and location of stop signs is left entirely to the discretion of the State Highway Commission. ORS 483.040. At common law, an abutting landowner was not required to remove or guard against dangerous conditions which existed prior to the dedication of a highway. Restatement, 2 Torts 996, § 368.

By analogy, it appears to us that no duty is placed upon an abutting landowner to remove a lawfully constructed structure after the state through its commission has decided to erect a stop sign, even though the prior structure interferes with the operation of the sign.

■ The plaintiff also contends that the defendant Power Company violated ORS 483.138(1), which reads as follows:

> "No person shall place, maintain or display upon or in view of any street or highway, any unofficial sign, signal or device which purports to be or is an imitation of or resembles an official traffic sign or signal, or which bears the words "Stop," "Go Slow," "Caution," "Danger," "Warning," or similar words, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any official traffic sign or signal."

The plaintiff's position is that the word "device" includes any obstruction that interferes with the "effectiveness of any official traffic sign or signal." It is clear from the context in which the word "device" is used in the statute it means any contrivance which would tend to mislead the traveler to believe the contrivance had official status in directing the movement of traffic, whether it resembles an official sign or not.

The trial court correctly entered a judgment of involuntary non-suit for the defendant Pacific Power & Light Company.

■ The plaintiff also contends that the trial court erred in instructing the jury with reference to the liability of the defendant Carter as follows:

> "I instruct you that a person does not comply with the duty to keep a reasonable lookout by

simply looking and not seeing that which is plainly visible and which would have been seen by a reasonably prudent person under the same or similar circumstances. I, therefore, instruct you that, if at the time of the accident, the Stop Sign would have been timely seen by a reasonably prudent person under the same or similar circumstances, then the defendant Carter would not be liable even though you found that the defendant Carter was negligent in some regard."

The state highway department issued a manual on Uniform Traffic Control Devices which provides that "the minimum size of the STOP sign" in rural districts "shall be 30 inches by 30 inches." The stop sign erected by the state employee Carter at this intersection after the issuance of the manual was an older sign that had previously been acceptable, but was only 24 inches by 24 inches. It is the plaintiff's contention that Carter's failure to follow the directive in the manual constituted misfeasance, and this neglect or negligence was a contributing cause of the accident.

The plaintiff's exception to the instruction is that "because the mere fact that a reasonable and prudent person would have seen the Stop Sign is not a defense to Carter."

The plaintiff seems to be of the opinion that misfeasance alone justifies recovery. It is well-established in this jurisdiction, as elsewhere, that the misfeasance of a defendant must have been a cause or a contributing cause of the accident that results in injury before a recovery may be had. It is equally well-settled that a person is not liable for the negligence of a tort feasor, unless the conduct of the tort feasor was authorized, participated in, or the person had the power to control the actions of the tort feasor. *Knapp v. Standard Oil Co.*, 156 Or 564, 68 P2d 1052.

There is no evidence in this case that defendant Carter had any connection with the defendant Manley Suess, the operator of the car in which plaintiff was riding. It, therefore, follows that the conduct of Carter is not to be measured by the conduct of Suess, but by the conduct of the reasonable prudent man, in determining the causal relation between the charged misfeasance of Carter and the resulting injury to the plaintiff.

The trial court correctly stated the law in this instruction.

■ The plaintiff also assigns error in the trial court's instruction to the jury setting forth the rules of law by which the jury should determine the status of the plaintiff, "guest" or "paying passenger," while riding in the Suess automobile.

We find no error in the instruction as given, but even should the instruction be considered erroneous, no reversible error would attach, since the plaintiff's own uncontradicted testimony discloses that the plaintiff was a guest as a matter of law.

The plaintiff testified that she and her husband were acquainted with Mr. and Mrs. Suess; that they learned about three weeks in advance that Mr. and Mrs. Suess were coming to visit in Eugene. Mr. and Mrs. Suess were invited to be house guests of the plaintiff and her husband and they accepted. The Ashlands, for the entertainment of their house guests, invited friends to a barbecue. In the evening the plaintiff's husband asked the Suesses if they would like to go through the sawmill where he worked and they "seemed very happy to get the chance to do it." The plaintiff further testified that Mr. and Mrs. Suess were not acquainted in and around Eugene and, there-

fore, did not know the way to the sawmill, and that, while she did not care to go through the sawmill, her "husband suggested that [she] could go riding along with them and show them the way," and she agreed to do this. It was on the return trip from the visit to the sawmill that the accident occurred.

The plaintiff's contention that she was a "paying passenger" must rest on the theory that she was bestowing a benefit upon Suess by acting as his guide to the sawmill. But as stated by this court in *Tarbet v. Green,* 236 Or 361, 363, 388 P2d 468,

> "* * * Plaintiff states the rule to be that 'One who accepts a ride for the sole purpose of performing a service for the driver of a vehicle is not a guest but a passenger.' The rule is stated too broadly. There must not only be a benefit but the benefit must be more than 'vague or trivial' and it must be one that has some significance beyond the usual social amenities which are expected in the relationship between the plaintiff and the defendant."

certainly the only conclusion that could be reached by reasonable minds from the facts in this case is that in guiding the Suesses to the sawmill plaintiff was merely performing her social duties as a good hostess by assisting her friends to enjoy their visit in Eugene.

We have examined other assignments of error claimed by plaintiff, but find nothing that would require a reversal of the judgments.

The judgments of the trial court are affirmed.

**ON REHEARING**

Arthur C. Johnson and Johnson, Johnson & Harrang, Eugene, for the petition.

PER CURIAM.

The petition for rehearing is denied. The only part of the petition which requires comment is directed to our holding that the following instruction to which the plaintiff duly excepted was not erroneous:

"I instruct you that a person does not comply

with the duty to keep a reasonable lookout by simply looking and not seeing that which is plainly visible and which would have been seen by a reasonably prudent person under the same or similar circumstances. I therfore [sic] instruct you that if at the time of the accident the stop sign would have been timely seen by a reasonably prudent person under the same or similar circumstances, then the defendant Carter would not be liable even though you found that the defendant Carter was negligent in some regard."

The effect of the instruction was to inform the jury that if Suess, the driver of the car in which the plaintiff was riding, was negligent in failing to see the sign, Carter's negligence, if any, became irrelevant. On reconsideration of the question we are of the opinion that, if there was evidence that Carter was negligent, the jury might have properly found that the concurrent negligence of Suess and Carter caused the accident; for proximate cause is usually a jury question. But we are also of the opinion that there was no evidence that Carter was negligent.

In *Lovins v. Jackson et al,* 233 Or 369, 378 P2d 727, we said that these sign regulations are not intended to fix standards of care, but are merely directives to the employees of the State Highway Commission. The plaintiff in that case was an employee of the Commission who was injured when a motor vehicle collided with a State Highway Department truck on which the plaintiff was engaged in work incidental to the operation of sanding a highway. The defendant pleaded contributory negligence of the plaintiff in failing to comply with a regulation of the Commission which required the placing of "Men Working" signs on the highway in the vicinity of the operation.

The regulation was adopted in pursuance of the Commission's general authority to "provide a uniform system of marking and signing" highways in the state. ORS 483.040. In the opinion the requirement of uniformity of signs was emphasized. That requirement is equally applicable to the instant case which, however, is governed also by ORS 483.204 (1) which authorizes the Commission to "designate main traveled or through highways by placing at the entrance thereto from intersecting highways signs and markers notifying drivers of vehicles to stop or yield the right of way before entering or crossing such designated highways * * *." Subsection two of that section makes it the duty of the driver of a vehicle approaching from the direction which the stop sign faces to stop before entering the favored highway.

The legislature in conferring such power upon the Commission was concerned, of course, both with the safety of the traveling public and the expeditious movement of motor vehicles. But the regulation does not have the force or effect of law. It is only after the Commission has acted that the statute becomes effective at the places and on the highways where stop signs of a size and design fixed by the Commission are erected.

No doubt it was the duty of Carter, as an employee of the Commission, to follow the regulation, but this was not a duty that he owed to the plaintiff or any other member of the public. So far as the relationship between the Commission and its employees is concerned, these regulations, as we said in the *Lovins* case, are mere directives imposing a duty upon the employees of the commission for the Commission's benefit only.

It is well established that a civil remedy can

be invoked by reason of a statute, ordinance or regulation only by members of the class for whose benefit the statute, ordinance or regulation was adopted: *Akers v. Chicago St. Paul M. & O. Ry. Co.,* 58 Minn 540, 544, 60 NW 669, 670; *Exner v. Sherman Power Const. Co.,* 54 F2d 510 (2d Cir, 1931), 80 ALR 686. Since the regulation here in question did not create a duty in the defendant Carter for the benefit of the plaintiff, its violation by Carter was not only not negligence per se, but was no evidence of negligence: *DiCaprio v. New York Cent. R. Co.,* 231 NY 94, 131 NE 746, 16 ALR 940; *Mansfield v. Wagner Electric Mfg. Co.,* 294 Mo 235, 242 SW 400; *Robertson v. Yazoo & M.V.R. Co.,* 154 Miss 182, 122 S 371.

This is not to say that the defendant Carter owed no duty towards the plaintiff. His conduct, as the petition for rehearing concedes, is to be measured by that of a reasonably prudent man engaged in a like undertaking. More precisely, it may be premised, he was required to erect a sign which would serve the purpose of giving an effective warning to motorists that they were approaching a main traveled highway and should stop. The regulation of the Commission called for a sign at the place in question 30 inches by 30 inches. The sign which Carter erected measured only 24 inches by 24 inches. But the plaintiff's own evidence, as we stated in our former opinion, and as the petition for rehearing does not dispute, disclosed that at a point 163 feet east of the sign it was clearly visible to a motorist proceeding towards it. If placing such a sign in such a position had been in strict compliance with a regulation of the Commission we doubt than anyone would have charged either the Commission or Carter with negligence. The case is no different simply because Carter did not follow the Commission's

directive. The evidence does not justify a finding that what Carter did constituted a failure to measure up to his duty towards the plaintiff. He moved for a directed verdict and the motion should have been granted. In these circumstances the instruction complained of, however erroneous, could not be a ground for reversal.

Petition denied.

The Chief Justice and Mr. Justice ROSSMAN did not participate in the foregoing opinion.