Susan **D. BRIZENDINE, by her Guardian, David W. Brizendine, Appellee,**

v.

**VISADOR COMPANY, a Texas corporation, and Pittsburgh Plate Glass Company, a Delaware corporation, Appellants.**

No. 25208.

United States Court of Appeals, Ninth Circuit.

Dec. 29, 1970.

LaMar Tooze, Jr. (argued), of Stephen R. Frank, E. Richard Bodyfelt, Tooze, Powers, Kerr, Tooze & Peterson, Portland, Or., for appellants.

Carl G. Helm (argued), La Grande, Or., Edwin J. Welsh (argued), Portland, Or., for appellee.

Before HAMLEY and WRIGHT, Circuit Judges, and LINDBERG, District Judge.*

HAMLEY, Circuit Judge:

After a non-jury trial in this diversity action to recover damages for personal injuries, the district court granted judgment for plaintiff Susan D. Brizendine and against Visador Company (Visador), and Pittsburgh Plate Glass Company (PPG). PPG alone appeals.

On the night of November 12, 1964, Susan and other high-school age parishioners of First Christian Church, La

---

* The Honorable William J. Lindberg, United States District Judge for the Western District of Washington, sitting by designation.

Grande, Oregon, were standing in the lobby of the church prior to the commencement of a church youth group meeting. Susan was standing near the doorway to the lobby. When one of the boys arrived and attempted to open the door, he lost his balance. His hand struck a 10″ x 10″ pane of glass in the upper half of the door panel. The glass shattered and a piece lodged in Susan's eye, causing serious injuries. This action followed.

Defendant Visador manufactures door window insert frames, purchases glass cut to size by the glass manufacturers, assembles the frames with the glass in place, and distributes the assembled inserts, "door lites," for sale in the usual channels of commerce throughout the United States. Visador manufactured the door lite here in question.

The glass which shattered was single strength B grade (SSB) glass, which, in the trade, ranges in thickness from .085″ to .095″. This particular insert, containing the SSB glass, came into the hands of Visador's Oregon distributor and was purchased from the distributor by Miller's Cabinet Shop in La Grande. The shop installed the door lite in the church door in question.

More than a month prior to the trial, PPG formally admitted that it manufactured the pane of glass contained in the door lite.[1] Shortly before the trial plaintiff came into possession of information which led it to believe that this particular pane of glass was not within the normal thickness range of SSB glass, but had an actual thickness of only .076″, or .009″ thinner than the minimum thickness of SSB glass. Glass of this thickness is properly classified "picture" glass instead of "single strength" glass.

Plaintiff thereupon submitted revisions in the proposed pretrial order which would expressly assert, as one contention, that PPG is liable because the particular pane in question was not as thick as required for SSB glass. PPG opposed approval of the revisions, stating that theretofore no such contention had been advanced and that, up to then, plaintiff had based its case solely on the proposition that SSB glass is generically unfit for use in 10″ x 10″ door lites used in public buildings. PPG also urged that, if such revisions were approved, the company should be granted a continuance in order to prepare to meet the new contention, and should be permitted to withdraw its admission that it manufactured the pane which shattered.

At first the trial court appeared to accept PPG's argument, manifesting that intent by striking certain language from the revised form of pretrial order.[2] Later, however, plaintiff was permitted to develop its SSB "undersize" contention at the trial, and PPG was denied permission to withdraw its admission that it manufactured the pane of glass here involved.

On the basis of findings and conclusions reported in 305 F.Supp. 157 (D. Or.1969), the court entered judgment for plaintiff, awarding $150,000 general damages, and $1,664.93 special damages.

The court predicated liability upon both strict liability and negligence. As to strict liability, the district court held that (a) SSB glass is intrinsically unsafe for public doors, as PPG knew or should have known thereby giving rise to a duty on the part of PPG to warn users of such glass of the danger involved in such a use, or to call the attention of such users to the need for and availability of safer glass, which duty

---

1. PPG based this admission upon sophisticated irradiation tests conducted for plaintiff by the Nuclear Reactor Center at Oregon State University, and its own laboratory tests.

2. When counsel for PPG adverted to this problem during his opening statement at the trial, the district court stated:

"You told the Court that if this specification of negligence was permitted to stand that they were injecting there, you were going to withdraw your admission so I did not permit it to stand and you did not withdraw your admission that Pittsburgh manufactured the glass."

PPG did not fulfill, although it knew or should have known that its SSB glass would be used in public doors; and (b) as an additional ground of liability, this particular pane was defective in that it was not within the accepted range of thickness of SSB glass. As to negligence, the district court's theory was the same as its (a) theory under strict liability, as set out above. The district court did not include, in its negligence theory of liability, any finding or conclusion to the effect that this particular pane was undersize for SSB glass.

On this appeal PPG argues: (1) the trial court erred in refusing to allow PPG to withdraw its admission that it manufactured the glass in question; (2) the trial court erred in allowing plaintiff to interject the "undersize" argument on the eve of the trial or, in the alternative, in failing to grant PPG a continuance; (3) the trial court erred in finding that the deviation in thickness of this particular pane was a proximate cause of plaintiff's injuries; and (4) the trial court erred in finding that: (a) PPG's SSB glass was unreasonably dangerous, (b) PPG breached a duty to warn others that SSB glass was unsafe for the use to which it was put by Visador and others in the distribution chain, and (c) such breach of duty was a proximate cause of the injury.

We turn first to a consideration of this fourth argument. It is concerned wholly with the question of whether PPG is liable because it gave no warning that SSB glass is not safe for use in doors in high traffic areas where contact with the glass is likely to occur. The district court relied upon this theory as one of its grounds for holding PPG liable under the concept of strict liability and as its only ground for holding PPG liable under the concept of negligence.

As PPG concedes, insofar as a duty to warn is concerned, there is no essential difference in the evaluation of a manufacturer's conduct under strict liability or negligence theories. A recent statement of Oregon law on the duty of the manufacturer to issue a warning is contained in Anderson v. Klix Chemical Co., Or., 472 P.2d 806 (1970). The court there observed that failure to warn, as a theory of recovery in tort, does revert to a negligence basis for liability. We accordingly direct our attention to the negligence aspect of the case.

In *Anderson*, the Oregon court indicated that a manufacturer's duty to warn arises when it is reasonably foreseeable to the manufacturer that the product would be unreasonably dangerous if distributed without a warning. The court below found that PPG knew, or should have known, that SSB glass was unsafe for use in doors in high traffic areas, such as here. The court also found that PPG supplied SSB to Visador for use in door lites; that PPG knew the marketing practices of Visador; and that those practices would result in use of the door lite in locations where safety required heavier glass.[3] Given this knowledge the court below held that PPG had a duty to warn of the

3. The court found as follows:
"I have no difficulty in finding that SSB was not a safe glazing material to be used in areas where persons might reasonably be expected to come into significant contact with the glass. Nor do I have any difficulty in finding that the church door, here under scrutiny, would fit in this category. Unquestionably, the doorway under scrutiny was one where a significant amount of physical contact could be expected, and the installation of the SSB door lite necessarily involved an unreasonable risk of harm. Already mentioned is the fact that the doorway to the meeting rooms was expected to regularly accommodate a substantial number of church members, including teenage children."
The court also found:
"PPG was well aware of the general use to which the SSB glass was put by Visador. It also knew strength limitations of the glass, its product. It knew or should have known that the product was unsafe for the use to which it was being put."

dangers involved. There is ample evidence to support the findings. Under Oregon law we believe these facts compel the conclusion that PPG had a duty to warn of the foreseeable dangers involved.

In *Anderson,* Restatement (Second) of Torts, § 388, quoted in the margin,[4] was cited with approval. The court below found each of the elements or conditions necessary to predicate liability upon negligent failure to warn.[5] Physical harm was caused plaintiff by the use of the SSB pane in the church door, and the door, with the glass, was being used in the manner intended. One entitled to enter the church was trying to open the door.[6] PPG had no reason to believe that Miller's Cabinet Shop or the church would realize the danger of using SSB glass in such an installation.[7] PPG failed to exercise reasonable care to inform the shop and the church of the dangerous condition or the facts which made it likely that it would be dangerous to use the SSB pane in the church door.[8]

PPG does not appear to contest the trial court's finding that SSB is not safe for use in doors used by the public. PPG does not take issue with the trial court's finding that heavier glass was readily available at a tolerable cost differential. Nor does it question the trial court's finding that PPG knew of Visador's practice of selling to a general market where the product was likely to be installed in a great variety of loca-

4. "§ 388. Chattel Known to be Dangerous for Intended Use

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

"(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

5. While section 388 is directed to suppliers of chattels in general, section 394 expressly places the same duty upon manufacturers of chattels. The Oregon court imposed liability upon a manufacturer in *Anderson.*

"§ 394. Chattel Known to be Dangerous

"The manufacturer of a chattel which he knows or has reason to know to be, or to be likely to be, dangerous for use is subject to the liability of a supplier of chattels with such knowledge."

6. As to this the trial court found:
"She [plaintiff] was standing at or near the double doors, just described, when a later arriving member, Stanley Bird, and his sister approached the door. Stanley was moving quickly toward the door to open it before it locked. He pulled on the door knob with his left hand. When the door did not open, he lost his balance and threw up his right hand to catch himself against the door. Stanley's hand struck the door near the top of the lite, his fingers hitting the wooden portion, his palm striking and shattering the glass. Slivers or shards of the shattered glass struck plaintiff in the face severely damaging her left eye."

7. The court did not make an express finding to this effect, but such a finding may fairly be implied from the court's determination that PPG had a duty to warn purchasers of the danger, and that its failure to warn was a proximate cause of plaintiff's injuries. The failure to warn could not have been the proximate cause of the injuries if PPG had reason to believe that the shop and the church realized the danger of using this SSB pane in the church door.

8. The court also found that Visador also had such a duty to warn, as a predicate for the judgment against Visador from which no appeal has been taken. Where an accident involves the asserted negligence of two or more persons, proximate cause is established as to any one of them when the trier of fact finds his conduct was at least a substantial factor in causing the harm. *See* Hills v. McGillvrey, 240 Or. 476, 402 P.2d 722

tions, including those where heavier glass, or safety glass, would be required.[9]

PPG's principal argument with respect to the negligence aspect of the case seems to be that, even if the glass in the Visador lite can fairly be characterized as unreasonably dangerous in this specific application, it can only be so characterized by virtue of an improper use to which PPG's product was put by Visador and others in the distributive chain; and that the record contains nothing to indicate that PPG authorized, participated in, or controlled the conduct of Visador.

What gave rise to PPG's duty to warn was its knowledge that some of this glass would probably be installed in doors used in public buildings, and PPG's lack of reason to believe that those buying door lites containing the glass would appreciate the danger. Thus PPG's assertion that the SSB pane was safe for "normal" handling has a faulty factual premise. PPG knew that it was "normal" for the door lites containing SSB to be installed in doors in public buildings.

Moreover, the fact that Visador incorporated the glass into door lites does not insulate PPG from liability here. In Anderson v. Klix Chemical Co., Ore., 472 P.2d 806 (1970), the injured employee of the person that purchased the product from a distributor recovered from the manufacturer. The distributor had made certain changes in the product, and the Oregon court assumed that the act of the distributor, in making the changes, was a cause of the injury. The Oregon court held that if the manufacturer should foresee such a change, he has a duty to take reasonable steps to alleviate the risk thereby created.

Here PPG had ample reason to anticipate Visador's conduct. In *Anderson,* the change was likely to occur because the product was amenable to the change, and persons often make such a change when there is an opportunity to do so. Here Visador's conduct was not merely likely. PPG supplied the SSB glass to Visador knowing that the glass would be used in door lites. PPG further knew that the door lites were marketed in such a way that they would likely be used in high traffic areas. Therefore, PPG should have taken reasonable steps to alleviate the risk thereby created.

▆ It is true, as PPG argues, that under Oregon law, a defendant cannot, except under circumstances not here present, be held liable for the conduct of another tortfeasor. *See* Ashland v. Pacific Power and Light Co., 239 Or. 241, 247, 395 P.2d 420, 423, pet. reh. denied, 239 Or. 251, 397 P.2d 538 (1964). But the basis of liability here does not purport to charge PPG with the tort of another. Rather, liability results from PPG's own negligence in failing to warn others that unreasonable danger lurks in certain of the foreseeable uses of its product.

PPG relies upon Thibodaux v. McWane Cast Iron Pipe Co., 381 F.2d 491 (5th Cir. 1967). In that case the defendant manufacturer was held not liable where the cast iron pipe which it supplied for a natural gas distribution system was involved in an explosion. But the cause of the explosion was a condition that was not discovered until after the accident, namely, that the soil underneath the city had some quality that produced rapid corrosion of the pipe. There are no analogous circumstances in the case now before us.

(1965). There is ample evidence to support the finding that PPG's conduct was a substantial factor in causing the injury here.

9. PPG does argue that the trial court erred in assertedly holding that PPG

had an affirmative duty to know where and how each 10″ x 10″ pane of SSB glass would be used. We cannot find any such ruling by the trial court. Nor is such a holding a prerequisite to liability in this case.

PPG also relies upon Jacobson v. Colorado Fuel and Iron Corp., 409 F.2d 1263 (9th Cir. 1969). In that case the defendant supplier of wire rope was held not liable for damages caused when the rope broke when subjected to a tension higher than its capability. Liability was denied even though the defendant knew that the wire rope was being put to this improper use. But the plaintiff sought to establish liability because of the supplier's failure to warn, and this court held that the purchaser and user already had sufficient knowledge of the danger involved in so using the product.

There is no showing in our case that the cabinet shop or the church knew of the danger of using SSB glass in the church door, nor that PPG had any reason to believe that they had such knowledge. However, PPG calls attention to the fact that Visador was fully aware of the physical qualities of SSB glass, and was completely informed of the virtues of safety glass. Therefore, argues PPG, a warning to Visador was neither necessary nor useful.[10]

■ But the trial court found that PPG's duty to warn required it not only to warn Visador, but to warn Miller's Cabinet Shop and the church.[11] The manufacturing supplier's duty to warn, as set out in section 388, is not limited to warning the immediate purchaser.

■ A 10″ x 10″ Visador lite is an exhibit in this case. Affixed to the glass in the lite is a sticker identifying the glass as PPG's "Pennvernon" glass and as single strength B glass ten inches square. PPG does not argue that it would be impracticable to give the necessary warning on a sticker of this kind.[12]

The company does complain that it ought not to be required to give a warning which would destroy its own market. But this would not be the necessary result of such a warning in view of the fact that PPG also manufactures heavier glass and safety glass. In any event, if the duty of reasonable care requires a warning, failure to give it is not excusable on the ground of its possible adverse effect upon the company's business.[13]

■ Where the supplier provides full information to the user the duty to warn is fulfilled, and the fact that the user thereafter insists upon using the product for an improper purpose is not chargeable to the supplier. A supplier of chattels should not be compelled to sell only the ultimate in materials. See Watts v. Bacon & Van Buskirk Glass Co., 18 Ill.2d 226, 163 N.E.2d 425 (1959). But here PPG did not give a warning to the cabinet shop or the church, although it would have been practicable for it to do so. PPG does not suggest why a warning to them would have been unavailing.[14]

10. PPG points out that, after this accident, Visador continued to use SSB glass just as it had before.

11. In the pretrial order, plaintiff charged PPG with negligence for failing to warn Visador, Miller's Cabinet Shop and the church. The trial court found and concluded that PPG was negligent "in the specifications as charged and each specification was a proximate cause of plaintiff's injuries."

12. We do not imply that PPG must sell glass to Visador only in 10″ x 10″ panes, so that a warning seal can be placed on each pane. We deal only with the facts of this case.

13. For example, the warning on packages of cigarettes is surely prejudicial to that business in the same sense that PPG argues the warning would be prejudicial to its business. We recognize that the cigarette warning is required by statute.

14. It is no answer to say that Visador might have removed PPG's sticker containing the warning, or that the cabinet shop might have done so. In imposing the duty to provide information to users, the law assumes that the performance of the duty will alleviate the unreasonable risk. Reasonable conduct on the part of others is justifiably expectable. If for some reason the warning fails to reach the persons who must make a de-

In the above discussion of the negligence issues we have not referred to each and every argument and nuisance explored in PPG's briefs on appeal. But all have been considered. We conclude that none of the essential findings of fact pertaining to negligence liability are clearly erroneous, and that the legal principles upon which negligence liability rests are sound.

The conclusion we have reached on the negligence branch of the case renders it unnecessary to consider PPG's other three arguments. All of them pertain to plaintiff's allegation that this particular pane of glass was undersize and that such undersize was a proximate cause of the accident.

As stated above, the trial court accepted this claim and made this one of the two grounds for recovery on the theory of strict liability. But since, as we have held, the judgment is independently supportable on the theory that PPG was negligent in failing to warn that SSB glass is unsafe for use in public doors, it is immaterial whether the "undersize" contention is sustainable in fact and law. It is likewise immaterial whether, since that contention was left in the case, PPG should have been granted a continuance of the trial and should have been permitted to withdraw its admission that it manufactured the pane in question.[15]

Affirmed.

---

cision based on the information contained in the warning, either the manner of giving the warning was improper or, in the interim, others acted unreasonably. We find nothing in this record to indicate that the suggested manner of giving the warning would have been ineffective. Therefore, given the circumstances as they exist here, were the warning given, but either not received or not followed, it would be because other parties acted unreasonably. In that event Susan would have had to pursue the parties that acted unreasonably, rather than PPG.

15. The theory that PPG was negligent in failing to warn of the danger in using SSB glass in public doors was in the case from the beginning. As to that theory PPG did not need, and did not seek, a continuance. Likewise as to that theory, PPG was content to admit that it was the manufacturer. It was only when plaintiff, according to PPG, interjected a new "undersize" theory, that PPG sought to withdraw its admission. But it sought such withdrawal only if plaintiff were permitted to develop its "undersize" theory. While plaintiff was permitted to develop that theory, we do not sustain the judgment on that ground. In our view, the development of the "undersize" theory during the course of the trial did not prejudice PPG in making a full presentation of its defense against the negligence claim upheld as an alternative ground for relief by the trial court, and as the only ground by this court.